St. Louis & S. F. R. Co. v. Jamieson.

No. 1944, Okla. T.  Opinion Filed April 13, 1908.

(95 Pac. 417.)

1.  CARRIERS—Freight—Statements in Bill of Lading—Conclusive-ness.  The statement on a receipt or bill of lading given by a railroad company that goods were received in "apparent good order" is not conclusive evidence to that effect, it being competent to show they were not in good order.

2.  SAME—Burden of Proof to Contradict.  By such receipt or bill of lading issued by the initial carrier as agent for the delivering carrier, however, the onus is put upon the delivering carrier to show they were not in the condition stated in the receipt.

3.  TRIAL—Demurrer to Evidence.  When any competent evidence has been presented for the consideration of the jury reasonably tending to prove the issues, it is proper to overrule a demurrer to the evidence or deny a motion for peremptory instruction; for in such a condition, under proper instructions from the court, the cause should be submitted to the jury for their determination.

4.  CARRIERS—Connecting Carriers—Freight—Actions for Loss or Injury—Presumptions and Burden of Proof.  Where several packages are delivered in one shipment and under a single entire contract to a carrier for shipment, not only over its own line, but also a connecting line, in an action by the consignee against the delivering carrier, from which he received a portion of the consigned goods, for injury and loss on the introduction by the plaintiff of the bill of lading issued by the initial carrier to the effect that the goods were received by it "in apparent good order," the burden of proof was on it to rebut such prima facie presumption of delivery in "apparent good order," or to show that the alleged damage or loss occurred before it reached its line.

5.  WRIT OF ERROR—Review—Questions of Fact.  Where the evidence in a case leaves it doubtful whether the particular carrier who is sued for a loss of goods, or another from whom that carrier received the goods, is liable, the Supreme Court will not disturb the findings in the court below.

(Syllabus by the Court.)

*Error from District Court, Washita County; before James K. Beauchamp, Judge.*

Action by H. L. Jamieson against the St. Louis & San Francisco Railroad Company. Judgment for plaintiff and defendant brings error. Affirmed.

This action was begun in the district court of Washita county, territory of Oklahoma, on the 5th day of September, 1904. On the 20th day of March, 1905, plaintiff filed his first amended petition, upon which the cause was tried. For his first count he alleges that on or about the 7th day of July, 1904, plaintiff delivered to the defendant, as a common carrier for hire, certain goods, consisting of 1 barrel of drugs, 10 boxes of drugs, 14 boxes of drugs, 1 case of drugs, and 1 can of oil at Sapulpa, Ind. T., consigned to M. E. Dixon at Shawnee, there to be delivered by the Chicago, Rock Island & Pacific Railway Company, a common carrier for hire, to said consignee; that said goods were accordingly delivered at Shawnee by the said Chicago, Rock Island & Pacific Railway Company in apparent good condition and placed in a proper place of storage. On the 16th day of August, 1904, the said goods, under instructions from the plaintiff, were redelivered to said railway company at Shawnee by the said M. E. Dixon and consigned to the plaintiff at Cordell, Okla., a station on the line of the defendant, the initial line issuing bill of lading for the entire shipment, reciting that the same were in apparent good order, and further stipulating that it should not be liable for damages or loss occurring on any connecting line. Plaintiff further alleges that a part of said shipment was lost and another portion damaged in transit, and prays for damage accordingly.

In another count plaintiff alleged that a certain piano was delivered by him to the defendant at Sapulpa to be shipped over the defendant's line to him at Cordell, Okla., and that said piano, through the negligence of defendant, was damaged in transit, and he prayed damages therefor. On the trial of the cause, by con-

sent of the plaintiff, this branch of the case was withdrawn from the jury.

The proper freight charges were paid by or for plaintiff on said shipment at place of destination.

Plaintiff stated in his testimony that he shipped from Sapulpa a stock of drugs and druggists' sundries, consisting of packages and boxes of medicines, toilet articles, such as are ordinarily carried in a drug store, tooth brushes, combs, etc., the entire stock invoicing $1,200; that he delivered same to defendant's station agent at Sapulpa, consigning same to Shawnee, Okla. T.; that when he received the goods at Cordell there were four packages missing, two cans missing, one box of drugs missing, and also one case of cigars. Afterwards the case of cigars and also the cans came in, but the box of drugs and the four missing packages were never delivered; also another box of drugs containing patent medicines and syrups were lost. Still another box was broken into the top through the center and the entire top taken off, bottles of drugs were broken, and the top just set down loose over the goods. One or two tops of other boxes were broken and medicine bottles were broken and the contents run out, and syrup run over the other goods and damaged the labels to a certain extent. Plaintiff stated further that he shipped a piano from Sapulpa, and also some household goods to furnish a suite of rooms, with furniture, beds, washstands, chairs, rocking chairs, tables, and the like. The value of all the goods were properly proved as well as the damages. Plaintiff further testified that the piano was in good tune and in good condition when he shipped it, but when he received it at Cordell it was damaged by dampness and rain, the sound board had gotten wet and the hammers dropped off and he had to get a piano tuner to tune it and put on a new hammer and safety weights; that it was so damp and swollen that the keys could not pass. He testified that the goods and chattels were packed in ordinary shipping boxes—heavy dry goods boxes; that he put excelsior and straw—mostly excelsior—around the bottles, and that

the drugs and goods and sundries were shipped in first-class condition. He stated that the portion of the drugs that were received in Cordell were in a damaged condition; the box tops had been broken off, one broken into and some of the goods and sundries therein lost, the bottles therein broken, and the liquids run out. Plaintiff further stated that he discovered the damages to these goods when he opened the packages as soon as they arrived; that he did not know they had been damaged until they arrived in Cordell. Plaintiff testified that the piano was shipped direct from Sapulpa to Cordell, and that the same was damp when he received it, but that the piano was dry and well packed when shipped.

Mrs. M. E. Dixon on behalf of the plaintiff testified that as agent of plaintiff she received the goods consigned to her by plaintiff from Sapulpa, and had them brought from the depot in drays and had them put in dry storage, and that all that time they were dry and in good condition, except two little pieces of plank that were broken off of a box, and that she had that repaired. But afterwards, under instructions from the plaintiff, she reshipped the goods in question in good shape and well preserved, consigning them to plaintiff at Cordell, Okla. T.; that she did not know anything about the contents of the boxes; that she knew the piano was a nice piano, but she did not know anything about its condition. It was not shipped to Shawnee but shipped direct to Cordell.

At the close of the testimony defendant demurred to the evidence on the ground that same was insufficient to entitle plaintiff to recover. The demurrer was overruled. To which action of the court defendant excepted. Thereupon the defendant moved the court for a peremptory instruction in its favor, which was denied, defendant saving its exception.

The jury returned a verdict in favor of the plaintiff for $250, at the same time returning answers to the interrogatories submitted to them by the court at the request of the defendant as follows:

"(1) Can you tell whether the damage to any of the goods

and medicines in question were incurred before their arrival at Shawnee or after their shipment from there? Answer: We consider from the evidence that the damage was done after shipment from Shawnee. (2) What was the value of the drugs claimed to have been lost on the market at Cordell at the time they would have been delivered there? Answer: $168.90. (3) Do you know whether or not any goods of plaintiff were broken or damaged before they were delivered to him at Shawnee? If you answer the last question 'Yes,' what goods were broken? Answer: No goods were broken on their arrival at Shawnee. (4) How many boxes of goods were delivered to plaintiff's agent at Shawnee? Answer: 26. (5) Did plaintiff or his agent inspect the goods at Shawnee to see if they had been damaged in shipment to that point? Answer: Yes."

Judgment was rendered upon said verdict; and thereafter, in due time, motion for new trial was filed, and this cause· is now properly before this court on petition in error. Reference will be made to the parties herein as they appeared in the court below.

*Flynn & Ames,* for plaintiff in error.
*James W. Smith,* for defendant in error.

WILLIAMS, C. J. The defendant insists that the lower court should have sustained its demurrer to the evidence or granted its motion for a peremptory instruction. In order to recover it was necessary for the plaintiff to prove that the defendant received the property alleged to have been injured or lost in good condition, and that when delivered to the consignee it was·damaged. The fact of loss and damage is not seriously denied, but it is contended that the record does not show that the goods, when delivered to the initial carrier, were in good condition. ·

The bill of lading issued by the Chicago, Rock Island & Pacific Railway Company at Shawnee reads that the same were received in "apparent good order," and it certainly must be construed that the goods were delivered to the connecting carrier in apparent good order, for therein the initial carrier stipulates that "in like good order to the next carrier if the same are to be for-

warded beyond the line of this company's road (same is) to be carried to the place of destination." This certainly evidences the fact that the initial carrier, when it received same, recognized the goods as in "apparent good order" and proposed delivering same in like "good order" at the final place of destination. When the connecting carrier accepted the shipment under the through rate under said bill of lading it thereby ratified the contract of the initial carrier, which, of itself, would have constituted such initial carrier the agent of the delivering carrier. When the goods were delivered to the consignee at the place of destination, the freight not having been paid, and the consignee paying same to the delivering carrier, no liability would rest upon such consignee to the initial carrier for the freight over its line. The delivering carrier would have the right to receive such freight and retain the goods until it is paid. Regarding such carrier as the agent for the other, the bill of lading to be given by the one is evidence against the other for the purpose of showing the goods delivered, their condition at the time of delivery, and the terms of shipment. If the carrier finally delivering the goods does not deliver them in the condition in which they were received by its agent, then it must account for the injury. The burden rests upon it to show that the injury occurred without its fault or negligence. To the extent of involving it in the liability of a common carrier after the goods shall come to its custody, the initial, or receiving carrier, of the goods had such authority. The burden of proof in cases of loss or injury rests upon the carrier to exempt itself from liability, the law imposing the obligation of such duty upon it. The failure to deliver, the carrier having received the goods, makes a *prima facie* case of liability. It appears that the goods were received by the Chicago, Rock Island & Pacific Railway Company, standing to the plaintiff in relation of agent, contracting for the plaintiff for transportation along its line and delivery at the place of destination. There was but a partial delivery of the goods. Has the plaintiff in error delivered all it received from its agent? How

did it obtain a part and not the whole, for the *whole* shipment was, by virtue of one contract and one bill of lading, made and issued by the initial carrier? These inquiries could certainly have been answered by the plaintiff in error; for it certainly possessed that knowledge or information, and until, by competent evidence, it shows the delivery of all it received, the presumption must attach that the loss or damage occurred by its default. Of course, the plaintiff in error is liable only for losses or injuries on its own line, but when a loss or injury is shown, and such could have occurred while it was in custody of the goods, and there is evidence the goods were delivered to it, it must account for the loss, for the loss or injury was a fact resting peculiarly within its own knowledge. Here, the entire shipment, consisting of about 27 packages, was delivered to the initial carrier under one entire contract, and all of said packages, except 4 or 5, were delivered to plaintiff at the place of consignment, but several of them in a damaged condition. How easy it would have been for the defendant to have shown that it did not receive all of those packages from the initial carrier, and, further, that those which it did receive were delivered to the consignee in the original condition when received from the initial carrier and by this means have discharged itself from liability? But the plaintiff in error stands upon the technical position that these goods which were shipped over the defendant's line from Sapulpa to the connecting point of the Chicago, Rock Island & Pacific Railway Company in transit to Shawnee might have been injured and damaged in that transit, notwithstanding the fact that the witness Mrs. Dixon, to whom these goods were consigned at Shawnee, testified that when received there they were in apparent good condition; that they were properly stored; and that when they were redelivered to the initial carrier for the, last shipment they were in apparent good condition, and the initial carrier so recited in its bill of lading, Now, certainly these four or five packages were not lost in transit from Sapulpa to Shawnee, but were from Shawnee to Cordell. The delivering carrier in

accepting this shipment from its agent, the initial carrier, because it was an entire shipment, is presumed to have received the entire shipment. If it did not, it had it within its power on the trial of this cause to have introduced proof to that effect. The law places that burden upon it. Both reason and authority sustain this presumption. The very uncertainty as to where the goods were or on whose line located, when damaged or lost, and the difficulty of ascertaining those facts by the consignor or consignee, renders this rule necessary. The carrier, almost without exception, will be able to show the condition of the property when reaching its custody; the shipper or consignee can rarely, if ever, do so. This is a salutary rule, resulting in justice to the greatest number affected; leaving it also to the party to prove the fact in whose power it expressly lies. In addition to that, one of these packages or boxes when delivered to the plaintiff had been broken and the syrups run out. Upon examination this injury would have been necessarily obvious. The initial carrier is presumed to have made a reasonable examination, and if it had made such examiation it would have discovered such condition of the packages shipped if, when they were delivered to it at Shawnee, they were in the same condition that they were in when delivered at Cordell. There was ample proof in this record to submit the issues to the jury. *Southern Express Co. v. Hess,* 53 Ala. 19; *Dixon v. Richmond & Danville R. R. Co.,* 74 N. C. 539; *Illinois Central R. R. Co. v. Cowles,* 32 Ill. 117; *Savannah, Florida & Western R. R. Co. v. Harris,* 26 Fla. 148, 7 South. 544, 23 Am. St. Rep. 551; *Gulf, Colorado & Santa Fe R. R. Co. v. Jones,* 1 Ind. T. 354, 37 S. W. 208; Hutchinson on Carriers (3d Ed.) vol. 3, § 1352; 6 Cyc. 490, 491, and authorities cited in footnote 40; Am. Digest (Century Ed.) vol. 9 pp. 743-750.

Plaintiff in error refers to the case of *Missouri Pacific Ry. Co. v. Breeding,* 16 S. W. 184, decided by the Texas Court of Civil Appeals, wherein it is said:

"Unless it appears from the evidence that the machine claimed

to have been injured was delivered to the defendant company or some connecting line of railroad in condition other than it was in when delivered at Rockdale, you may presume the defendant did its duty, and delivered the machine in the condition it was in when received."

Now, in this record, it appearing that the initial carrier receipted for these goods as in "apparent good order," the carrier is presumed to have done its duty and to have examined these packages, and after such reasonable examination the recital is made in the bill of lading that the packages were in apparent good order. The testimony on the part of the plaintiff, by the person who handled these goods, is that at the time of shipment from Shawnee to Cordell they were in apparent good order. Of those packages that reached their final destination one had been broken in. By inspection that could have been discovered; and the bottles in others were broken and the liquids running out. Likewise, by reasonable inspection, that could have been and was discovered. Some of the packages of that whole shipment never reached their destination. Where the evidence in a case leaves it doubtful whether the particular carrier who is sued for the loss of goods, or another from whom that carrier received the same, is liable, the Supreme Court will not disturb the finding of the jury. *Illinois Central Railroad Co. v. Cowles*, 32 Ill. 117.

The provisions in the rate bill as to the issuing of bills of lading by the initial carrier and liability for loss has no application to this case. Act June 29, 1906, c. 3391, § 7, 34 Stat. 595 (U. S. Comp. St. Supp. 1907, p. 909), First Session, Fifty-Ninth Congress, 1905-6.

There appearing no reversible error in the record, the judgment of the lower court is affirmed.

All the Justices concur.