## FT. SMITH & W. R. CO. v. AWBREY & SEMPLE.

### No. 2914. Opinion Filed September 2, 1913.

#### (134 Pac. 1117.)

1.    COURTS—Carriers—Delay of Shipment—Liability of Initial Carrier—Jurisdiction—State and Federal Courts. Property was delivered to a carrier to be transported over its own line and some connecting lines. The property was unreasonably delayed in transit through the fault of a connecting carrier. Held: (1) That under the provisions of section 7 of the Act of June 29, 1906, c. 3591, 34 St. at L. 593 (U. S. Comp. St. Supp. 1911, p. 1307), commonly called the Carmack Amendment, amending section 20 of the Act of February 4, 1887, c. 104, 24 St. at L. 386 (U. S. Comp. St. 1901, p. 3169), which amendment provides in substance that the initial carrier shall be liable for damages caused by it or by any connecting carrier to whom the property may be delivered or over whose lines it may pass, the initial carrier is liable for

damages for said delay at the suit of the consignee.   (2) That the state courts have jurisdiction of the action against the initial carrier, though its liability is created by said statute.

2.    **CARRIERS—Shipment—Damages for Delay—Estoppel.**   After the property had been unreasonably delayed, the consignees agreed to receive it if delivered promptly after said agreement, but expressly stated that they did not thereby waive their claim for damages for delay.   When the property was delivered it was short in weight, which was paid.   Held, that the consignees were not estopped by receiving pay for the short weight from asserting their claim for damages for the delay.

3.    **SAME—Delayed Shipment—Measure of Damages—Construction of Shipment Contract.**   A provision in the bill of lading as follows: ''In the event of the loss of property under the provisions' of this agreement, the value or cost of the same at the point of shipment shall govern the settlement''—did not furnish the measure of damages in the event of delay in transportation, and it was not error to refuse to instruct the jury, in an action for damages for delay in transportation, that the measure of damages would be the difference in the value of the property at the place of shipment at the time of shipment and the time it was actually received.

(Syllabus by Rosser, C.)

*Error from District Court, Logan County;*
*A. H. Huston, Judge.*

Action by Awbrey & Semple against the Ft. Smith & Western Railroad Company.   Judgment for plaintiffs, and defendant brings error.   Affirmed.

*C. E. & H. P. Warner,* and *Dale, Bierer & Hegler,* for plaintiff in error.

*J. F. Bledsoe* and *Devereux & Hildreth,* for defendants in error.

Opinion by ROSSER, C.   This was an action by Awbrey & Semple, hereinafter called plaintiffs, against the Ft. Smith & Western Railroad Company, hereinafter called defendant, to recover damages for delay in the shipment of certain cars of coke, shipped by the Sans Bois Coal Company from its mines at McCurtain to the plaintiffs at El Paso, Tex.   The facts are that the coke was delivered to the defendant road by the Sans Bois Coal Company at its mines at McCurtain, Okla. (then Indian Territory).   The defendant hauled the coke to

Crowder, where it connects with the Missouri, Kansas & Texas Railway Company. The Missouri, Kansas & Texas Railway Company refused to receive the coke for shipment, because the Texas & Pacific Railway Company had placed an embargo, in force at the time of the shipment, against shipments of coke from Ft. Worth to El Paso or to points beyond, on account of an alleged inability to move cars through to El Paso. Though some of defendant's evidence was excluded, enough is in the record to show that defendant made all reasonable effort to induce the Missouri, Kansas & Texas Railway Company and the Texas & Pacific Railway Company to receive the coke and forward it to El Paso. The plaintiffs recovered a judgment. Plaintiffs base their right to recover upon a portion of section 7 of the act of June 29, 1906, entitled "An act to amend an act entitled 'An act to regulate commerce,' approved February 4, 1887," etc., commonly known as the Carmack Amendment. 34 St. at L. 959 (U. S. Comp. St. Supp. 1911, p. 1307). Section 7 is amendatory of section 20 of said act, and the portion under which plaintiffs claim a right to recover is as follows:

"That any common carrier, railroad, or transportation company receiving property for transportation from a point in one state to a point in another state shall issue a receipt or bill of lading therefor and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it or by any common carrier, railroad, or transportation company to which such property may be delivered or over whose line or lines such property may pass, and no contract, receipt, rule, or regulation shall exempt such common carrier, railroad, or transportation company from the liability hereby imposed: Provided, that nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under existing law."

The first error assigned by the defendant is that the court had no jurisdiction to try this case, because the matters involved were within the exclusive jurisdiction of the federal courts. The defendant bases its contention that the state courts are without jurisdiction upon section 9 of the act approved

February 4, 1887, entitled "An act to regulate commerce." 24 St. at L. 382 (U. S. Comp. St. 1901, p. 3159). That section provided that:

"Any person or persons claiming to be damaged by any common carrier subject to the provisions of this act may either make complaint to the Commission as hereinafter provided for, or may bring suit in his or their own behalf for the recovery of the damages for which such common carrier may be liable under the provisions of this act, in any district or circuit court of the United States of competent jurisdiction; but such person or persons shall not have the right to pursue both of said remedies, and must in each case elect which one of the two methods of procedure herein provided for he or they will adopt, etc."

The amendment to section 20, above quoted, is not affected by the provisions of section 9 of the Act of 1887, above quoted. Prior to the amendment the state courts had jurisdiction of actions against carriers for loss, damage, or injury to property. That amendment merely enabled the shipper to recover from the initial carrier, regardless of whether or not the loss, damage, or injury occurred while the property was in its possession or upon its line. Another portion of the act gave the initial carrier its remedy against the connecting carrier. There is nothing in the amendment in any way indicating that it was the purpose of Congress to take from the state courts a jurisdiction which they had had up to that time in actions for loss, damage, or injury to property shipped. The amendment merely shifted the responsibility in some cases from the connecting carrier to the initial carrier. In this case the petition alleged simply a delivery of the coke to the defendant and its failure to ship.

The defendant in its answer admitted the failure to ship but pleaded that the failure was occasioned by the embargo of the connecting carrier, the Texas & Pacific Railway Company. The court merely decided that on account of the provisions of the amendment to section 20, above set out, the act of the connecting carrier afforded the defendant no defense. The iden-

tical question was passed upon in *Pittsburg, C., C. & St. L. Ry. Co. v. Mitchell,* 175 Ind. 196, 91 N. E. 735. In the course of the opinion the court said:

"We are thus confronted with the question of jurisdiction. The complaint, it will be noted, counts upon a common-law liability and also contains the averments required by the Act of April 15, 1905 (Acts 1905, c. 47; Burns' Ann. St. 1908, secs. 3918, 3919). Upon the face of the complaint no statute is invoked except the Act of 1905, and the allegations thereof give the court jurisdiction of the subject-matter. The federal statute is only invoked incidentally as a reply to the defense sought to be interposed by the bill of lading. We are not able to discover that the precise question has received the attention of the Supreme Court of the United States, but strong analogies may be found in the pronouncements of that court. The acts of Congress in force relating to subjects over which Congress has power to legislate for the state are expressly declared by the statute to be the law of the state. Burns' Ann. St. 1908, sec. 236. Interstate commerce is within the exclusive regulation of Congress, but it is regulation within and for the benefit of the states and their citizens. The laws of the United States are laws of the several states and just as much binding on the citizens and the courts thereof as the state laws are. The United States is not a foreign sovereignty as regards the several states but is a concurrent, and within its jurisdiction a paramount, sovereignty. Every citizen of a state is a subject of two distinct sovereignties, having concurrent jurisdiction in the state concurrent as to place and persons, though distinct as to subject-matter. * * * So rights, whether legal or equitable, acquired under the laws of the states may be prosecuted in the United States courts or in the state courts competent to decide rights of the like character and class, subject, however, to this qualification: That, where a right arises under a law of the United States, Congress may, if it sees fit, give to the federal courts exclusive jurisdiction. * * * This jurisdiction is sometimes exclusive by express enactment and sometimes by implication. If an act of Congress gives a penalty to a party aggrieved without specifying a remedy for its enforcement, there is no reason why it should not be enforced, if not provided otherwise, by some act of Congress, by a proper action in a state court. The fact that a state court derives its existence and functions from the state laws is no reason why it should not afford relief, because it is subject also

to the laws of the United States and is just as much bound to recognize these as operative within the state as it is to recognize the state laws. The two together form one system of jurisprudence which constitutes the law of the land for the state; and the courts of the two jurisdictions are not foreign to each other, nor to be treated by each other as such, but as courts of the same country, having jurisdiction partly different and partly concurrent.' *Clafin v. Houseman* (1876) 93 U. S. 130, 126, 23 L. Ed. 833. *Pratt v. Paris, etc., Co.* (1897) 168 U. S. 255, 18 Sup. Ct. 62, 42 L. Ed. 458, is instructive and to the point. The plaintiff in error sued the defendants in error in a state court in assumpsit on the common counts for the price of a patented machine, a common-law action. The defendant answered that the patent was void and an infringement on prior patents, and they had no right to use it, and the consideration had failed. The question arose on the trial when, upon the court admitting evidence tending to show that the patents were invalid as infringements, plaintiffs in error contended that the court thereby assumed jurisdiction of a patent case. The Supreme Court, speaking by Mr. Justice Brown, said: 'The state court had jurisdiction of the parties and the subject-matter as set forth in the declaration, and it could not be ousted of such jurisdiction by the fact that incidentally to one of these defenses the defendant claimed the invalidity of the patent. To hold that it has no right to introduce evidence upon this subject is to do a wrong and deny it a remedy. Section 711 does not deprive the state courts of the power to determine questions arising under the patent laws but only of assuming jurisdiction of "cases" arising under those laws. There is a clear distinction between a case and a question arising under the patent laws. The former arises when the plaintiff in his opening pleading, be it a bill, complaint, or a declaration, sets up a right under the patent laws, as a ground for a recovery.' In order that jurisdiction shall lodge in the federal courts exclusively, it must be a federal case arising under the cause of action stated from the questions involved. *Riverside Mills v. Atlantic, etc., Co.* (C. C.) 168 Fed. 987; *Osborn v. Bank of U. S.,* 9 Wheat. 824, 6 L. Ed. 204. It is urged that jurisdiction is in the federal courts by virtue of section 9 of the Interstate Commerce Act, reading, in part, as follows: 'Sec. 9. That any person, or persons claiming to be damaged by any common carrier subject to the provisions of this act may either make complaint to the Commission as hereinafter provided for, or may bring suit in his or their own behalf for the recovery of

the damages for which such carrier may be liable under the provisions of this act, in any District or Circuit Court of the United States of competent jurisdiction; but such person or persons shall not have the right to pursue both of said remedies, and must in each case elect which one of the two methods of procedure herein provided for, he or they will adopt.' This section was enacted in 1887. 3 U. S. Comp. St. 1901, p. 3159. If the case stood upon that section alone, it might be that there is room for argument that the language excludes state jurisdiction. But the amendment of section 20 of June 29, 1906, introduces into the law an element wholly lacking under section 9, *supra,* when the latter was enacted. * * * It is the injection of section 9 into the cause which appellant urges as disclosing the want of jurisdiction in the court below. The proviso of section 20 is an expressed recognition of the act as being cumulative, and in addition to existing rights, either at common law or under state statutes, and an expressed reservation of the right to maintain any action which might be maintained irrespective of the act, and, as it seems to us, expressly confers concurrent jurisdiction upon the state courts, and that the general law obtains, and that only in cases where the amount is in excess of $2,000 can the federal courts have jurisdiction, and that is the view of the Supreme Court of Kentucky. *Louisville, etc., Co. v. Scott* (1909) [133 Ky. 724] 118 S. W. 990 [19 Ann. Cas. 392]."

In the case of *Galveston, H. & S. A. R. Co. v. F. A. Piper Co.,* 52 Tex. Civ. App. 568, 115 S. W. 107, the court said:

"If the law against restriction of liability by a carrier in interstate shipments is one that can be rendered available only by litigants in the federal courts, then, in every case of negligence resulting in damage to property the common carrier would not only be liable for attorney's fees but, under the provisions of section 10 of the Act of 1887, would be liable to a fine of $5,000. As before stated, if a suit was founded on a refusal to give a receipt, or, it may be added, if a suit rested on the giving of a receipt with liability restricted therein, the attorney's fees might be recovered and the fine of $5,000 imposed, but the idea cannot be entertained that the Congress of the United States intended to provide for the recovery of attorney's fees and the imposition of heavy fines in cases of failure to safely transport property from one part of the Union to another. In this class of cases, at least, it was never intended to confer exclusive jurisdiction on the Circuit and Districts Courts of the United States."

See, also, *Central of Georgia R. Co. v. Sims,* 169 Ala. 295, 53 South. 826.

In the cases of *K. C. S. R. Co. v. Carl,* 227 U. S. 639, 33 Sup. Ct. 391, 57 L. Ed.—, *M., K. & T. R. Co. v. Harriman Bros.,* 227 U. S. 657, 33 Sup. Ct. 397, 57 L. Ed. —, *Adams Express Co. v. Cronninger,* 226 U. S. 491, 33 Sup. Ct. 148, 57 L. Ed. —, and *C., B. & Q. R. Co. v. Miller,* 226 U. S. 513, 33 Sup. Ct. 155, 57 L. Ed. —, the Supreme Court of the United States decided appeals from the state courts where the Carmack Amendment was involved without intimating that the state courts were without jurisdiction.

In this case the plaintiffs brought a common-law action for delay. The defendant offered the defense that it had done its duty and that the default was that of the connecting carrier. The plaintiffs answer by saying that under the federal statute, defendant, as the initial carrier, was responsible for the defaults of the connecting carrier. This did not oust the jurisdiction of the state courts.

The next proposition urged is that under the evidence the court should have instructed a verdict for the defendant. In other words, it is urged that, as the defendant used all reasonable effort to induce the connecting carrier to forward the coke, it is not liable. This contention cannot be sustained. The amendment of section 20, quoted above, makes the initial carrier responsible for the acts or defaults of the connecting carrier. The connecting carrier is in effect the agent of the initial carrier.

In the case of *Atlantic C. L. R. Co. v. Riverside Mills,* 219 U. S. 186, 31 Sup. Ct. 164, 55 L. Ed. 167, 31 L. R. A. (N. S.) 7 (1861), Mr. Justice Lurton, referring to the Carmack Amendment, said:

"In substance Congress has said to such carriers: 'If you receive articles for transportation from a point in one state to a place in another, beyond your own terminal, you must do so under a contract to transport to the place designated. If you are obliged to use the services of independent carriers in the continuance of the transit, you must use them as your own agents and not as the agents of the shipper.' It is therefore

not the case of making one pay the debt of another. The receiving carrier is, as principal, liable not only for its own negligence but for that of any agency it may use, although, as between themselves, the company actually causing the loss may be primarily liable."

The next ground assigned for reversal is that plaintiffs are estopped to recover in this action, because after they received the coke they filed a claim for shortage which was paid by the defendant. No authorities are referred to to sustain this proposition. The record shows that there was a shortage in the weight of the coke and that plaintiffs mailed to defendant a statement of the amount of this shortage, which the defendant paid. But it was independent of any claim for damages for delay. The record shows that, after the shipment was refused by the Missouri, Kansas & Texas Railway Company, the defendant unloaded the cars, and plaintiffs demanded that the purchase money be refunded. Afterwards plaintiffs agreed to accept the coke if it could be forwarded promptly, but stated in the letter agreeing to accept it that they did not waive their claim for damages by reason of delay. The shortage in weight was not known at that time and arose subsequent to the delay. The defendant knew there was a claim for delay and knew the claim they paid was for shortage in weight. Therefore no estoppel arises.

Finally it is urged that the court erred in refusing to instruct the jury in substance that the measure of plaintiffs' recovery would be the difference in the value of the coke at the place of shipment at the time of shipment and at the time it was actually received. Defendant bases this contention upon the following provision of the bill of lading: "In the event of the loss of property under the provisions of this agreement, the value or cost of the same at the point of shipment shall govern the settlement." This provision does not apply in this case. It was intended to govern in cases where the property was lost or destroyed. It has no application in a case where the property was delivered and the damage was occasioned by delay.

Several other questions are raised, but the disposition made of those already mentioned renders it unnecessary to discuss the others.

The judgment should be affirmed.

By the Court: It is so ordered.