### ST. LOUIS & S. F. R. CO. v. AKARD.

No. 5998—Opinion Filed July 11, 1916.

(159 Pac. 344.)

**1. Trial — Taking Case from Jury — Demurrer—Peremptory Instructions.**

When any competent evidence has been presented for the consideration of the jury reasonably tending to prove the issues, it is proper to overrule a demurrer to the evidence or deny a motion for peremptory instruction; for in such a condition, under proper instructions from the court, the cause should be submitted to the jury for their determination.

**2. Appeal and Error—Review—Questions of Fact.**

Where the evidence in a case leaves it doubtful whether the particular carrier who is sued for a loss of goods, or another from whom that carrier received the goods, is liable, the Supreme Court will not disturb the findings in the court below.

**3. Commerce—Carriage of Goods—Connecting Carrier—Statutory Provisions.**

The act to regulate commerce provides: "That any common carrier, railroad, or transportation company receiving property for transportation from a point in one state to a point in another state shall issue a receipt or bill of lading therefor and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it or by any common carrier, railroad, or transportation company to which such property may be delivered or over whose line or lines such property may pass, and no contract, receipt, rule, or regulation shall exempt such common carrier, railroad, or transportation company from the liability hereby imposed." Carmack Amendment to Hepburn Act (Act June 29, 1906, c. 3591, sec. 7, par. 11, 34 Stat. 595 [U. S. Comp. St. 1913, sec. 8592]). The act provides that nothing in the above section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under existing law.

**4. Carriers—Carriage of Goods—Connecting Carriers—Liabilities.**

The statute provides: "That the common carrier, railroad, or transportation company issuing such receipt or bill of lading shall be entitled to recover from the common carrier, railroad, or transportation company on whose line the loss, damage, or injury shall have been sustained the amount of such loss, damage, or injury as it may be required to pay to the owners of such property, as may be evidenced by any receipt, judgment, or transcript thereof." Paragraph 12 (section 8592.)

**5. Same—Limitation of Liability.**

On February 29, 1908, the Circuit Court of the Western District of Arkansas (Smeltzer v. St. Louis & S. F. R. Co., 158 Fed. 649), held that the provision in the Hepburn Act, commonly called the Carmack Amendment, which makes an initial carrier liable for loss, damage, or injury to through shipments, whether such losses occur on or off the line of the initial carrier, is constitutional, and that a clause in a bill of lading, providing that an initial carrer's liability on an interstate shipment of goods transported over the lines of several carriers from point of origin to destination shall be limited to losses occurring on its own line, is in conflict with the Carmack Amendment. The court said that Congress in adopting this amendment seems to have recognized the difficulty involved, on the part of shippers, when goods are lost, in tracing the goods, fixing the liability, and recovering their loss. It seems to have recognized the additional fact, that the facilities of the initial carrier are much greater than those of the shipper to locate the goods and fix the liability for loss or damage. The court further declared that these provisions rest on substantial grounds of public policy which inspired this remedial legislation for the regulation of the immense volume of interstate commerce.

**6. Same.**

Under the common law, independently of statute, where a common carrier receives property for carriage beyond its own line, issuing a through bill of lading therefor, specifying the freight for through carriage, it makes the connecting carriers its agents, and is responsible to the shipper for any loss or damage to such property, either on its own or the connecting lines, which liability it cannot limit by contract.

**7. Commerce—Carriage of Goods—Connecting Carriers—Statutory Provision.**

The Carmack Amendment to the Hepburn Act, relating to the liability of common carriers of property in interstate commerce for loss or damage to such property, but which contains the proviso "that nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under existing law," leaves a shipper free to resort to the laws of a state applicable to his contract.

**8. Trial — Carriers — Action for Loss of Goods—Requisite Instructions.**

Although requested instructions may correctly state the law, yet, if the law applicable to the issues involved in the case is fairly and substantially given by the court in its charge, a judgment will not be reversed because of refusal to give such requested instructions. It is not required that the entire law of the case shall be stated in a single instruction, and it is therefore not improper to state the law, as applicable to particular questions, or particular parts of the case in separate instructions, and if there is no conflict in the law as stated in different instructions, and all the instructions considered as a series present the law applicable to the case fully and accurately, it is sufficient.

**9. Appeal and Error—Review—Questions of Fact—Verdict.**

Where the jury is properly instructed upon an issue of fact joined by the pleadings, and there is evidence reasonably tending to support their finding on that issue, their verdict will not be disturbed by the Supreme Court.

**10. Carriers—Carriage of Goods—Connecting Carriers—Liability of Delivering Carrier.**

The evidence in the case shows that these shipments were delivered to the initial carrier under a continuous contract to destination in a condition that was plenty good to ship, and the fact that the initial carrier received them for shipment and did ship them tends to show beyond a doubt that they were in a shipping condition. Under the rule laid down by this court in the case of St. Louis & S. F. R. Co. v. Jamieson, 20 Okla. 654, 95 Pac. 417, if the carrier finally delivering the goods does not deliver them in the condition in which they were received by its agent, the initial carrier, then it must account for the injury.

**11. Same—Burden of Proof—Authority of Initial Carrier.**

The burden rests upon it, the delivering carrier, to show that the injury occurred without its fault or negligence. To the extent of involving it, the delivering carrier, in the liability of a common carrier after the goods shall have come to its custody, the initial or receiving carrier of the goods had such authority. The burden of proof in cases of loss or injury rests upon the carrier to exempt itself from liability, the law imposing the obligation of such duty upon it. The carrier, almost without exception, will be able to show the condition of the property when reaching its custody; the shipper or consignee can rarely, if ever, do so. This is a salutary rule, resulting in justice to the greatest number affected, leaving it also to the party to prove the fact in whose power it expressly lies.

**12. Appeal and Error—Review—Questions of Fact.**

Both sides brought forward their proofs before the jury touching these several matters and things, and the jury on the whole case found, by their verdict, that the cattle were injured while in the custody of the defendant, and through its fault or negligence. This court will not disturb the verdict, and will not, when the evidence in a case leaves it doubtful whether the particular carrier who is sued for a loss or an injury to live stock, or another from whom that carrier received such property, is liable, disturb the findings in the court below.

**13. Carriers—Carriage of Goods—Limitation of Liability.**

Again as to interstate shipments, the common-law liability of the carrier for the safe carriage of property may be limited by special contract with the shipper, when such contract, being supported by a consideration, is reasonable and fairly entered into by the shipper, and does not attempt to cover losses caused by the negligence or misconduct of the carrier.

(Syllabus by Davis, C.)

Error from County Court, Pushmataha County; L. P. Davenport, Judge.

Action by A. H. Akard against the St. Louis & San Francisco Railroad Company. Judgment for plaintiff, and defendant brings error. Affirmed.

W. F. Evans, R. A. Kleinschmidt, and Fred E. Suits, for plaintiff in error.

Arnote & Powell, for defendant in error.

Opinion by DAVIS. C. Reference will be made to the parties herein as they appeared in the court below. The amended petition of plaintiff is as follows, omitting caption and mere formal parts:

"Comes now the plaintiff and for cause of action against the defendant states:

"1. That defendant is a railroad corporation organized under the laws of the state of Missouri, and owns and operates a line of railroad. and which runs into and through Antlers and Pushmataha county.

"2. That on or about the 4th day of April, 1912, at Ft. Worth, Texas, plaintiff herein delivered to the St. Louis, San Francisco & Texas Railway Company, at Ft. Worth, Texas. for transportation over the line of the St. Louis, San Francisco & Texas Railway Company to Paris, Texas, and over the St. Louis & San Francisco Railroad from Paris, Texas, to Antlers, Oklahoma. for a reasonable compensation agreed to be paid by the plaintiff. said railroad companies agreed to carry from Ft. Worth, Texas, to Antlers. Oklahoma. and there deliver to the plaintiff in good condition and within reasonable time after receipt thereof by them as aforesaid. 51 head of yearlings. the property of the plaintiff and valued at $——. which the plaintiff then and there delivered to the said railroad defendant, and the said railroad defendant then and there received the same upon the agreement and for the purposes

aforesaid, on a through billing of said cattle over both roads from Ft. Worth, Texas, to Antlers, Oklahoma.

"3. Plaintiff further alleges that defendant in shipping and transporting said cattle above mentioned negligently and carelessly acted in such manner with said cattle that one was killed in the car before it arrived in Antlers, Oklahoma, and three others were so bruised, hurt, and wounded by defendant's negligence and careless handling of them that they died soon after their arrival and unloading at Antlers, to the plaintiff's damage in the sum of $42.00.

"4. As a further cause of action against the defendant, plaintiff states that on or about the 5th day of April, 1912, at Fort Worth, Texas, plaintiff delivered to the said St. Louis, San Francisco & Texas Railway for transportation over the line of the St. Louis, San Francisco & Texas Railway to Paris, Texas, and the St. Louis & San Francisco Railroad from Paris, Texas, to Antlers, Oklahoma, for a reasonable compensation agreed to be paid by the plaintiff, said railroad companies agreed to carry from Ft. Worth, Texas, to Antlers, Oklahoma, and there to deliver to the plaintiff in good condition and within reasonable time after receipt thereof by them as aforesaid, 45 head of cattle, the property of the plaintiff, which the plaintiff then and there delivered to the defendant, and the defendant then and there received the same upon the agreement for the purposes aforesaid, on a through billing of said cattle over both roads from Ft. Worth, Texas, to Antlers, Oklahoma.

"5. That upon the arrival of said cattle at Paris, Texas, the defendant negligently and carelessly and contrary to its agreement and obligation to plaintiff, unloaded said cattle in its stock pens at Paris, Texas, and held them for local freight, and that one steer was by the defendant left in the stock pens at Paris, Texas, and died there, to plaintiff's damage in the sum of $25.00, and that by reason of said negligent and careless handling, the other cattle in shipment were damaged in the sum of $35.00.

"6. That plaintiff herein filed his claim in writing with the station agent of the St. Louis & San Francisco Railroad Company at Antlers, Oklahoma, on the 29th day of April, 1912, a copy of which claim is hereto attached, marked Exhibit A, and made a part of this petition.

"Wherefore plaintiff prays judgment against the defendant in the sum of $102.00, and for the costs, and for general and special relief."

To this amended petition the following exhibit is attached.

"Antlers, Oklahoma, April 29, 1912.

"Agent, Antlers, Oklahoma:

"Herewith hand you my claim, $54, for four head cattle killed in transit from Ft. Worth, Texas. On April 4th I shipped from Ft. Worth, Texas, to Antlers 51 head yearlings, and on arrival at Antlers there were one dead and two bruised and skinned up so had that they died in few hours after unloading, and these three yearlings were worth $10.50 each; and on April 5th I shipped from Ft. Worth, Texas, to Antlers, Oklahoma, 45 head of cattle, and on arrival at Paris, Texas, these cattle were unloaded and held for local freight, and one steer was left in stock pens at Paris and died there. This steer is worth $22.50. Total of claim, $54. Please handle this claim as promptly as possible and an early settlement will be appreciated.

"Yours truly,      A. H. Akard."

The answer of the defendant is as follows:

"Comes now the defendant herein, and for answer to the petition of the plaintiff: Defendant denies each and every material allegation in said petition."

We adopt the reasoning and the conclusions reached and announced by Chief Justice Williams in the well-considered case of St. Louis & S. F. R. Co. v. Jamieson, 20 Okla. 654, 95 Pac. 417, and make the same the law of this case on the questions therein decided and herein raised.

It is true that this was an interstate shipment, and plaintiff could have sued the initial carrier, St. Louis, San Francisco & Texas Railway, but was not bound to do so, but could bring his action in the state courts against the delivering carrier, St. Louis & San Francisco Railroad Company, as he did.

"The act to regulate commerce provides: 'That any common carrier, railroad, or transportation company receiving property for transportation from a point in one state to a point in another state shall issue a receipt or bill of lading therefor and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it or by any common carrier, railroad or transportation company to which such property may be delivered or over whose line or lines such property may pass, and no contract, receipt, rule, or regulation shall exempt such common carrier, railroad, or transportation company from the liability here imposed.' The act provides that nothing in the above section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under existing law.

"The statute provides: 'That the common carrier, railroad, or transportation company issuing such receipt or bill of lading shall be entitled to recover from the common carrier, railroad, or transportation company on whose line the loss, damage, or injury shall have been sustained the amount of such loss, damage or injury as it may be required to pay to the owners of such property, as may be evidenced by any receipt, judgment, or transcript thereof.' On February 29, 1908, the Circuit Court of the Western District of

Arkansas held that the provision in the Hepburn Act, commonly called the Carmack Amendment, which makes an initial carrier liable for loss, damage, or injury to through shipments, whether such losses occur on or off the line of the initial carrier, is constitutional, and that a clause in a bill of lading providing that an initial carrier's liability on an interstate shipment of goods transported over the lines of several carriers from point of origin to destination, shall be limited to losses occurring on its own line, is in conflict with the Carmack Amendment.

"The court said that Congress in adopting this amendment seems to have recognized the difficulty involved, on the part of shippers, when goods are lost, in tracing the goods, fixing the liability, and recovering their loss. It seems to have recognized the additional fact that the facilities of the initial carrier are much greater than those of the shipper to locate the goods and fix the liability for loss or damage. The court further declared that these provisions rest on substantial grounds of public policy which inspired this remedial legislation for the regulation of the immense volume of interstate commerce.

Under the common law, independently of statute, where a common carrier receives property for carriage beyond its own line, issuing a through bill of lading therefor, specifying the freight or through carriage, it makes the connecting carriers its agents, and is responsible to the shipper for any loss or damage to such property, either on its own or the connecting lines, which liability it cannot limit by contract.

Interstate Transportation, Barnes (2d Ed.) secs. 306 to 309, inclusive.

See Smeltzer v. St. L. & S. F. R. Co. (C. C.) 158 Fed. 649; Riverside Mills v. A. C. L. R. Co. (C. C.) 168 Fed. 987; Atlantic C. L. R. Co. v. Riverside Mills, 219 U. S. 186, 31 Sup. Ct. 164, 55 L. Ed. 167, 31 L. R. A. (N. S.) 7.

The Hepburn Act (Act June 29, 1906, c. 3591, sec. 7, 34 Stat. 595 [U. S. Comp. St. Supp. 1907, p. 909]), relating to the liability of common carriers of property in interstate commerce for loss or damage to such property, but which contains the proviso 'that nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under existing law.' leaves a shipper free to resort to the laws of a state applicable to his contract." Latta v. Chicago, St. P., M. & O. Ry. Co., 172 Fed. 850, 97 C. C. A. 198; Ft. Smith & W. R. Co. v. Awbrey & Semple, 39 Okla. 270, 134 Pac. 1117; Chicago, R. I. & P. R. Co. et al. v. Harrington et al., 44 Okla. 41, 143 Pac. 325.

The defendant asked the trial court to give the following instruction to the jury:

"The jury are instructed in this case by the court that this is a suit for the recovery of damages against the defendant the St. Louis & San Francisco Railroad Company, for injuries alleged to have been done to certain cattle shipments from Ft. Worth, Texas, to Antlers, Okla., and the plaintiff in his amended petition alleges the facts to be as follows, to wit: That on the dates set out in the contracts of shipment he entered into a contract with the St. Louis, San Francisco & Texas Railway to transport the cattle in question to Paris, Tex., and there deliver the same to the St. Louis & San Francisco Railroad, the defendant herein, and that the billing of said cattle was made by the initial carrier, the St. Louis, San Francisco & Texas Railway, through to Antlers, Okla.

"You are therefore instructed by the court that, if you shall find from the evidence and proof in this case, by a fair preponderance of the evidence and proof, that the initial carrier—that is, the St. Louis, San Francisco & Texas Railway—carried said cattle safely to Paris, Tex., and there delivered the same to the St. Louis & San Francisco Railroad in good condition, or in the same condition as when received by initial carrier, and that the injury, if any, was had and sustained after they were delivered to and were in the charge and custody of the defendant the St. Louis & San Francisco Railroad between Paris, Texas, and Antlers, Okla., then and in that event your verdict should be for the plaintiff, and for whatever amount of damages you may believe from the evidence he sustained by reason of the injury, if any, to the cattle, not over $102.

"But, on the other hand, if you shall believe from the evidence and proof that the injury and damage to said cattle, if any, was had and done while in the charge and custody of the initial carrier, the St. Louis, San Francisco & Texas Railway, between Ft. Worth, Tex., and Paris, Tex., and that the cattle in question were delivered at Antlers, Okla., by the connecting carrier, the defendant herein the St. Louis and San Francisco Railroad, in the same condition as when received by them from the initial carrier, the St. Louis, San Francisco & Texas Railway, and that no injury was done to the cattle while in the charge and custody of the St. Louis & San Francisco Railroad, the defendant herein, then and in that event you are instructed by the court that there would be no liability upon the part of the connecting carrier, the defendant herein, and that the plaintiff's right of action for whatever injury the cattle may have sustained would be against the initial carrier, the St. Louis, San Francisco & Texas Railway, and your verdict should be for the defendant.

"In other words, the court instructs you that, where a shipment of property is made over different lines of railroad, that road only

is liable for injury done to the property while in its charge and custody."

This the court refused to do, and the defendant duly excepted; the court giving the following charge to the jury as shown by the record:

"The plaintiff in this case, A. H. Akard, has instituted suit against the defendant St. Louis & San Francisco Railroad Company for damages and injury to two shipments of cattle alleged to have been shipped from Ft. Worth, Tex., to Antlers, Okla., and that said cattle were delivered to the St. Louis, San Francisco & Texas Railway, under a through rate contract to point of destination, which was Antlers, Okla., on the St. Louis & San Francisco Railroad Company.

"Gentlemen of the jury, it will be your duty in this case to determine from the evidence adduced before you whether the damages and injury complained of by plaintiff in this case occurred on the defendant company's lines, as it would not be liable for any injury that occurred on the line of any other connecting carrier before delivery to this defendant.

"The court instructs you that if you believe from the evidence in this case that the injury to any of said cattle occurred after delivery of same to it by the St. Louis, San Francisco & Texas Railway, the initial carrier in this contract, then you will find for the plaintiff in such sum as you may believe just and proper from all the evidence in the case, and if you fail to so find after a consideration of all the evidence you will return a verdict for the defendant.

"If you believe from the evidence in this case that the plaintiff, A. H. Akard, delivered the cattle in question to the initial carrier, the St. Louis, San Francisco & Texas Railroad Company, and the delivering carrier, the St. Louis & San Francisco Railroad Company, accepted the shipment under the through rate under said bill of lading, it thereby ratified the contract of the initial carrier, which, of itself, would make the initial carrier the agent of the delivering carrier, and if the delivering carrier does not deliver the cattle in the condition in which they were received by its agent, then it must account for the injury."

This, we think, was sufficient under the authority of Great Western Coal & Coke Co. v. Serbantas, 50 Okla. 118, 150 Pac. 1042; Missouri, O. & G. Ry. Co. v. Millers. 45 Okla. 173, 145 Pac. 367; Grant et al. v. Milam, 20 Okla. 672, 95 Pac. 424; M., O. & G. Ry. Co. v. Vandivere, 42 Okla. 427, 141 Pac. 799; St. L. & S. F. R. Co. v. Peery & Murray, 40 Okla. 258, 138 Pac. 144; St. L. & S. F. R. Co. v. Long, 41 Okla. 177, 137 Pac. 1156.

The jury were properly instructed in the light of the evidence in the case. The testimony was conflicting as to where and just when the injuries complained of were received by the cattle in question. These were all questions of fact to be submitted to the jury, and to be found and determined by them from the evidence, under proper instructions from the court. The jury saw and heard all the witnesses, observed their manner of testifying and their demeanor while on the witness stand, and were in a far better position to judge of the weight and credibility to be given to the testimony of each than is this court, and, having found the defendant liable to the plaintiff for the damages sued for by their verdict, under these circumstances, this court will not interfere to set such verdict aside. "Where the jury is properly instructed upon an issue of fact joined by the pleadings, and there is evidence reasonably tending to support their finding on that issue, their verdict will not be disturbed by the Supreme Court." Burns, Receiver, v. Vaught, 27 Okla. 711, 113 Pac. 906; Grant et al. v. Milam, 20 Okla. 672, 95 Pac. 424; Great Western Mfg. Co. v. Davidson Mill & Elevator Co., 26 Okla. 626, 110 Pac. 1096; Binion v. Lyle, 28 Okla. 430, 114 Pac. 618; Oklahoma Portland Cement Co. v. Anderson, 28 Okla. 650, 115 Pac. 767; Bland v. Peters, 30 Okla. 798, 120 Pac. 631; American Nat. Bank v. Halsell, 43 Okla. 126, 140 Pac. 399; Johnson v. Johnson, 43 Okla. 582, 143 Pac. 670.

The defendant makes the following contention in its brief:

"The contracts upon which plaintiff's cattle were transported are identically the same, and contain a notice in bold-face type at the top, reading as follows:

" 'Notice.

" 'This Company has Two Rates on Live Stock.

" 'The rate charged for shipment of live stock under the following contract is lower than the rate charged if the shipment is not made under the following contract, but at carrier's risk. The rates of freight are based upon the nature and extent of liability assumed by the carrier. The shipper has the right of election whether to ship live stock under this contract at the lower rate, or not under this contract, but at the carrier's risk, at a higher rate.'

"Section 4 of the contract is as follows: 'The company shall not be responsible for any death, loss or injury sustained by the live stock from any defect in the cars, overloading of cars, escape of live stock, or because the live stock are wild, unruly or weak, or maim each other or themselves, or from fright, crowding, heat or suffocation.'

"Section 17 of said contract is as follows: 'The shipper acknowledges that he has had the option of shipping the live stock at carrier's risk at a higher rate, or under this contract at a lower rate, and that he has elected to make this contract and accept the lower rate.'

"Since the passage of the Hepburn Act by

Congress on June 29, 1906 (34 Stat. 584, c. 3591, U. S. Comp. St. Supp. 1911, p. 1284), the state under its police power has ceased to have authority to pass acts relative to contracts made by carriers relating to interstate commerce, and the common-law liability of the carrier for the safe carriage of property may be limited by a special contract made with the shipper. Adams Express Co. v. Croninger, 226 U. S. 491, 33 Sup. Ct. 148, 57 L. Ed. 314, 44 L. R. A. (N. S.) 257; Missouri, K. & T. R. Co. v. Harriman, 227 U. S. 657, 33 Sup. Ct. 397, 57 L. Ed. 690; Kansas City S. R. Co. v. Carl, 227 U. S. 639, 33 Sup. Ct. 391, 57 L. Ed. 683; Atchison, T. & S. F. R. Co. v. Robinson, 233 U. S. 173, 34 Sup. Ct. 556, 58 L. Ed. 901; Boston & Maine R. Co. v. Hooker, 223 U. S. 97, 34 Sup. Ct. 526, 58 L. Ed. 868, L. R. A. 1915B, 450, Ann. Cas. 1915D, 593: St. Louis & S. F. R. Co. v. Bilby, 35 Okla. 589, 130 Pac. 1089; St. Louis & S. F. R. Co. v. Zickafoose, 39 Okla. 302, 135 Pac. 406; Missouri, O. & G. R. Co. v. French, 52 Okla. 222, 152 Pac. 591; St. Louis & S. F. R. Co. v. Wood & McAlester, 52 Okla. 176, 152 Pac. 848.

"The gist of plaintiff's cause of action is found in the third paragraph of the bill of particulars, reading as follows: 'That said defendant, in shipping and transporting said cattle above mentioned, negligently and carelessly acted in such manner with said cattle that one was killed in the car before it arrived at Antlers, Okla., and three others were so bruised, hurt, and wounded by defendant's negligent and careless handling of them that they died soon after their arrival and unloading at Antlers.' And in the fifth paragraph thereof, reading as follows: 'That upon the arrival of the said cattle at Paris, Texas, the defendant negligently and carelessly and contrary to its agreement and obligation to plaintiff, unloaded said cattle in its stock pens at Paris, Texas, and held them for local freight, and that one steer was by the defendant left in the said stock pens at Paris, Texas, and died there, to plaintiff's damage in the sum of $25.00, and that by reason of said negligent and careless handling the other cattle in shipments were damaged in the sum of $25.'

"There is an entire lack of evidence as to any negligence on the part of the defendant, or on the part of the St. Louis, San Francisco & Texas Railway Company, or the Paris & Great Northern Railroad Company. The plaintiff did not introduce one line of testimony tending to show any rough handling of either of said shipments, and under the allegations upon which said action is predicated there is no proof upon which the verdict of the jury and the judgment of the court can stand."

The evidence in the case shows that these shipments were delivered to the initial carrier under a continuous contract to destination in a condition that was plenty good to ship, and the fact that the initial carrier received them for shipment and did ship

them tends to show beyond a doubt that they were in a shipping condition. Under the rule laid down by this court in the case of St. Louis & S. F. R. Co. v. Jamieson, supra, if the carrier finally delivering the goods does not deliver them in the condition in which they were received by its agent, the initial carrier, then it must account for the injury. The burden rests upon it, the delivering carrier, to show that the injury occurred without its fault or negligence. To the extent of involving it, the delivering carrier, in the liability of a common carrier after the goods shall have come to its custody, the initial or receiving carrier of the goods, had such authority. The burden of proof in cases of loss or injury rests upon the carrier to exempt itself from liability, the law imposing the obligation of such duty upon it. The carrier, almost without exception, will be able to show the condition of the property when reaching its custody; the shipper or consignee can rarely, if ever, do so. This is a salutary rule, resulting in justice to the greatest number affected, leaving it also to the party to prove the fact in whose power it expressly lies.

Both sides brought forward their proofs before the jury touching these several matters and things, and the jury on the whole case found, by their verdict, that the cattle were injured while in the custody of the defendant, and through its fault or negligence. This court will not disturb the verdict, and will not, when the evidence in a case leaves it doubtful whether the particular carrier who is sued for a loss of and injury to live stock, or another, from whom that carrier received such property, is liable, disturb the findings in the court below. . . . . .

Again, as to interstate shipments, the common-law liability of the carrier for the safe carriage of property may be limited by special contract with the shipper, when such contract, being supported by a consideration, is reasonable and fairly entered into by the shipper, and does not attempt to cover losses caused by the negligence or misconduct of the carrier. Adams Express Co. v. Croninger, 226 U. S. 491, 33 Sup. Ct. 148, 57 L. Ed. 314, 44 L. R. A. (N. S.) 257; St. Louis & S. F. R. Co. v. Cox et al., 40 Okla. 258, 138 Pac. 144.

We find no reversible error in the action of the trial court complained of by the defendant in permitting the plaintiff's witness, Helms, to give certain testimony to the jury over the objection and exception of the defendant.

For these reasons we do not think the trial court erred in overruling defendant's demurrer to plaintiff's evidence, in overruling defendant's request for a peremptory instruction at the close of the plaintiff's case and at

the close of all the evidence in the case, in refusing to give to the jury the instruction asked for by the defendant, in giving the instructions that were given to the jury in the case, and in overruling the defendant's motion for a new trial, and the judgment of the trial court is therefore affirmed.

By the Court: It is so ordered.