## MIDLAND VALLEY R. CO. v. EZELL.

### No. 818. Opinion Filed May 9, 1911.

### (116 Pac. 163.)

1. **CARRIERS—Contracts Requiring Notice of Damages—Validity**
A contract between a railway company and the shipper of live stock for the transportation of live stock, providing that, as a condition precedent to the shipper's right to recover for any damages or for any loss or injury to his stock during transportation thereof, he will give definite written notice of his claim to some general officer or agent of the railway company as soon after the occurrence of the loss or damages as the circumstances will permit, and that if he should fail from any cause to give such notice within 91 days from the date of such loss or damages, no liability shall exist therefor under the contract, does not violate section 1128 of Comp. Laws of Okla. 1909.

2. **SAME—Injury to Live Stock—Petition—Sufficiency.** In an action upon such contract for loss and injury to live stock during transportation, a petition which fails to allege compliance with the conditions of the contract requiring notice of the claim of damages thereof is defective and insufficient to state a cause of action.

(Syllabus by the Court.)

*Error from Osage County Court; C. E. Bennett, Judge.*

Action by H. G. Ezell against the Midland Valley Railroad Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

*Edgar A. De Meules,* for plaintiff in error.

*T. J. Leahy, E. F. Scott,* and *C. K. Templeton,* for defendant in error.

HAYES, J. This proceeding in error is brought to review a judgment of the county court of Osage county in an action wherein defendant in error seeks to recover damages in the sum of $130 for alleged loss and injury to one car of hogs shipped by him from Easterly Station in the state of Texas to Foraker in this state. The shipment took place before the admission of the state into the Union. Defendant in error alleges in his petition in the lower court that for a valuable consideration plaintiff in error agreed to accept, carry, and transfer said car of hogs from the station in Texas to said point in Oklahoma. He further alleges that at the time of said agreement, on the 24th day of August, 1906, a bill of lading was executed by the agent of the railway company when the car of hogs was delivered to and accepted by plaintiff in error, which bill of lading is attached to his petition and by specific declarations in the petition is made part thereof. He alleges that the damages sustained by him consist of bills expended for feed for the hogs, loss of two hogs escaping from plaintiff in error's pens where the same were unloaded at one of its stations, and for injury received by the hogs resulting from a wreck of the train of which the car was a part, resulting in the death of one hog, crippling some, and injuries of general character to all the others. After answer, the cause was tried to a jury, whose verdict was for defendant in error.

Defendant in error introduced as part of his evidence in chief the contract attached to and made part of his petition, which is, in the main, the ordinary shipper's contract generally used and executed by railway companies and shippers for the shipment of live stock, and contains such covenants and conditions as are usually found in such contracts. The seventh covenant therein reads as follows:

"That said second party further expressly agrees as a condition precedent to his right to recover for any damages or for any loss or injury to his said stock during transportation there-

of, or previous to the loading thereof for shipment, that he will give definite written notice of his claim to some general officer or agent of the first party as soon after the occurrence of such loss, damage or injury as the circumstances will permit, and that should he fail from any cause to give the party of the first part the said notice within ninety-one days from date of loss, damage or injury to said stock, his failure to do so shall be a complete bar to any recovery on any and all such claims."

There was a demurrer by plaintiff on error, both to defendant in error's petition and to his evidence. The grounds upon which the same were urged upon the attention of the trial court were that defendant in error failed to allege in his petition or to establish by evidence that the notice of claim for any damages required under the foregoing seventh covenant of the contract had been given or waived. Plaintiff in error contends, and defendant in error concedes, that these questions, as well as all other questions arising under the pleadings and evidence in this case, must be determined in accordance with the laws of the territory of Oklahoma as they existed at the time of the injury to the hogs; and we therefore are saved the necessity of determining by what statutes or laws the rights of the parties under the contract are governed.

Defendant in error contends, first, that the seventh covenant of the contract is void; and, second, that if it is not void this is an action *ex delicto*, and the provisions of the contract have no application to it. The validity of this character of stipulations in contracts for the shipment of live stock was first considered in this jurisdiction in *St. L. & S. F. Ry. Co. v. Phillips*, 17 Okla. 264, 87 Pac. 470, wherein such stipulations are held, when reasonable, to be valid and not against the policy of the law. This case has been several times considered and followed by the present court: *M., K. & T. Ry. Co. v. Davis*, 24 Okla. 677, 104 Pac. 34, 24 L. R. A. (N. S.) 866; *St. L. & S. F. Ry. Co. v. Cake*, 25 Okla. 227, 105 Pac. 322. But in none of these cases was any reference made to section 1128 of Comp. Laws of Okla. 1909, which reads as follows:

"Every stipulation or condition in a contract by which any party thereto is restricted from enforcing his rights under the

contract by the usual legal proceedings in the ordinary tribunals, or which limits the time in which he may thus enforce his rights, is void."

Counsel for defendant in error call the court's attention to this statute, and insist that the contract here involved is in contravention thereof; but in this we think they are in error. The last clause of this statute prohibits contracts fixing the limit of time within which suits may be brought. This clearly has no application to the matters covered in the seventh stipulation of the contract here involved, for that covenant does not attempt to fix the time within which suit thereon, if any, shall be brought; nor is it here urged that this action cannot be prosecuted because not brought within any time fixed by the contract. The first clause of this statute, as was said by the court in *Hartwell v. Northern Pac. Exp. Co.,* 5 Dak. 463, 41 N. W. 732, 3 L. R. A. 342, states substantially the common-law doctrine as generally announced by the decisions of all the courts, that contracts by which parties undertake to stipulate that they will not enforce any rights they may have under a contract by the usual legal proceedings are void. The contract in this case does not attempt to restrict either of the parties as to the character of proceeding in which he shall enforce his rights thereunder. It does not impose a limitation upon the time proceedings shall be taken to enforce the rights of either party; but its terms do provide that there shall be no right for damages under the contract arising from certain causes named therein, unless the notice stipulated for shall be given. The stipulation creates a condition precedent to the existence of the right, rather than a limitation upon the enforcement of that right, and does not, we think, fall within the statute.

Recurring to defendant in error's contention that this is an action *ex delicto* rather than an action *ex contractu,* it may be said that, under the various Codes of Practice adopted in. the several states, the courts often find difficulty in ascertaining whether plaintiff has elected in this character of case to sue upon a breach of duty imposed by the common law or upon the contract. There are no fixed and certain rules which may be applied to all cases to determine this question. Generally, it must

be determined in each case by the allegations of plaintiff's petition, taken as a whole. In 3 Hutchinson, Carriers, p. 1579, however, one general rule is stated in the following language:

"As at common law, the mere mention of the word 'undertake,' 'promise,' or the like, would not be sufficient to indicate an intention to rely upon the contract. These words, as we have seen, do not necessarily refer to or imply, in pleading, a contract. If, however, the contract should be distinctly set out, and its description should be accompanied by its profert or exhibit, as is required by many, perhaps by all, of such Codes, when the contract is sued upon, it would be conclusive that the party had elected to rely upon it instead of upon the failure in the performance of the legal duty."

Plaintiff in the instant case alleges in his amended petition an agreement between him and plaintiff in error; alleges that a consideration was agreed to be paid by him; the delivery by him and acceptance thereof by the carrier of the live stock involved; the execution of such agreement in writing; the delivery of the agreement executed by the railway company, and acceptance of same by him. As required by the Code, when any written instrument is to be made the basis of an action, he attached the contract to his petition, and, by specific declaration in his petition, makes it part thereof. If, under the foregoing facts, there could be any doubt, tested by the general rule stated above, that defendant in error intended to base his action upon a contract between him and the carrier to transport safely the hogs, that doubt would be removed by the manner in which defendant in error has treated his own petition in the trial of the cause. He introduced the contract in evidence, and his testimony and the court's order relative to the admission thereof are as follows:

"Q. Did you receive at that time a live stock contract for the shipment? A. Yes, sir. Q. Was there any particular routing made at that time between you and the person accepting the shipment over what roads they should be shipped? A. I. & G. N., M., K. & T., and Midland Valley. Q. I will now hand you a paper and ask you to state whether or not this is the live stock contract made at the time you loaded the hogs at the original place of loading in Texas? A. Yes, sir; that's the one. Q. Examine that instrument and state whether or not that is your

signature. A. Yes, sir; it is. Q. And that is the contract that you received at the time you loaded these cars? A. Yes, sir. [Be it remembered: That here the plaintiff offered in evidence the bill of lading or contract attached to the amended petition, referred to therein as 'Exhibit A' and made a part of said amended petition, and above identified by the plaintiff H. G. Ezell, which said offer was accepted, and the said bill of lading or contract was by the court admitted in evidence and marked 'Exhibit A.'] Q. I will ask you to examine the indorsement on the bill of lading and ask you what it is? A. I. & G. N., Mineola; M., K. & T., Nelagony; Midland Valley. Q. Do you know who placed that on there? A. No; I do not. Q. But it was on the contract at the time you received it? A. I suppose the agent put it on there; I give him the routing. Q. Do you know the routing transported this shipment of hogs to the station at Nelagony? A. That's what the agent told me. Q. And from what you observed on the train en route? A. Yes, sir."

Plaintiff in error was not the initial carrier with whom the contract was executed; and from the foregoing evidence and other evidence disclosed by the record, it is clearly apparent that defendant in error was trying to fix the liability upon plaintiff in error, on whose line the injuries occurred, because it had accepted the shipment of hogs under said contract from the connecting carrier. Defendant in error might have waived the contract and elected to bring his action upon the basis of plaintiff in error's common-law liability, without referring to the contract or setting out the same in his petition. If he had done so, then in order for plaintiff in error to have availed itself of the special conditions in the contract limiting its liability, it would have been necessary for it to have pleaded the contract in its answer; but, when plaintiff based his action upon the contract which contains the stipulation that as a condition precedent to his right to recover any damages for loss or injury occurring to the live stock during transportation, written notice within 91 days from the date of loss shall be given to the carrier, it was necessary for him to show on his petition that the condition had been performed; and, in the absence of such averment, his petition does not state facts sufficient to constitute a cause of action. *Louisville, New Albany & Chicago Ry. Co. v. Widman,*

10 Ind. App. 92, 37 N. E. 554; *United States Express Co. v. Harris*, 51 Ind. 127; *Kalina v. Union Pac. Ry. Co.*, 69 Kan. 172, 76 Pac. 438. Nor did plaintiff make any effort to show by his evidence that such condition had been complied with. The demurrers to the petition and the evidence should have been sustained.

There are other assignments of error; but, since in all probability the questions already considered will dispose of the case, and the matters complained of in the other assignments will not likely occur in any subsequent trial of the case, we forego a consideration of them.

The judgment of the trial court is reversed and the cause remanded.

All the Justices concur.