## MISSOURI, O. & G. RY. CO. v. FRENCH.

No. 5351.   Opinion Filed October 12, 1915.

Rehearing Denied November 9, 1915.

(152 Pac. 591.)

1.  **CARRIERS—Interstate Shipment—Liability of Initial Carrier—Contract by Connecting Carrier—Effect.**   Where, in an interstate shipment, the initial carrier issues a bill of lading, a connecting carrier over whose line the shipment passes on the way to its destination cannot enter into a new contract with the shipper by which the liability of such carrier is lessened in case of damage to the property so being carried over its line as a link in the interstate transportation.

2.  **SAME—Contract Limitation of Liability—Validity.**   An interstate carrier may, by fair, open, and reasonable agreement, limit the amount recoverable, by the shipper, in case of injury to the property being transported, to an agreed value, made for the purpose of obtaining a lower of two legal rates, proportioned to the amount of the risk, but it cannot, by such contract, divest itself of the obligations of a common carrier and change itself into a forwarder only.

3.  **CARRIERS—Interstate Shipments—Liability of Carrier.**   By the Carmack amendment to the Interstate Commerce Act (Act Cong. Feb. 4, 1887. c. 104, sec. 20. 24 Stat. 386, as amended by Act June 29, 1906, c. 3591, sec. 7, 34 Stat. 595 [U. S. Comp. St. 1913, sec. 8592, pars. 11, 12]), Congress has relieved carriers of interstate shipments from the liability of insurers, as it was at common law, and the liability imposed on such carriers is limited to any loss, injury, or damage caused by them, or by a succeeding carrier to whom the property may be delivered, and plainly implies some default in it, some negligence on the part of the initial carrier, or some connecting line over which the property is transported.

4.  **SAME—Instructions.**   So, where, in an action for injury to property carried in interstate commerce, the court charged that carrier was liable as an insurer, **held** reversible error.

5.   **CARRIERS—Master and Servant—Prima Facie Negligence—Res Ipsa Loquitur—Injury to Interstate Shipment.** Where the shipper shows damage resulting from an accident which, with the exercise of ordinary diligence, does not ordinarily happen, by which damage is produced, he makes out a case of **prima facie** negligence. So, where the car in which the property is being transported from one state to another leaves the track while in transit, and turns over, by which the property is injured, it is **prima facie** evidence of negligence; but this rule does not apply as between master and servant.

(Syllabus by Devereux, C.)

> *Error from District Court, Hughes County;*
> *John Caruthers, Judge.*

Action by W. C. French against the Missouri, Oklahoma & Gulf Railway Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded, with directions to grant a new trial.

This action was instituted to recover damages from the plaintiff in error for injury to two mules and certain household goods shipped by the defendant in error from Arma, Kan., to Big Wells, Tex. The Missouri Pacific Railroad was the initial carrier, who transported the goods to Rex, Okla., where they were delivered to the plaintiff in error, to be delivered to a connecting road, interstate carriage from Kansas to the destination in Texas, and while being transported over the road of the plaintiff in error, to be delivered to a connecting road, which was to complete the journey, the car in which the goods were loaded was derailed and overturned, and the damage sued for was done to the property of the defendant in error. It also appears that the property in the car consisted of household goods, grain, hay, and live stock. In regard to the household goods, the contract of carriage was that made by the Missouri Pacific, which contained the provision, "Emigrant outfit, H. H. goods Rel $10

Cwt." In regard to the live stock a bill of lading was issued by the plaintiff in error, which contained a provision that the defendant was not a common carrier in the transportation of the live stock, but was only a forwarder or private carrier for hire, and that the defendant was not liable unless it was negligent, and that the burden of proof should be on the plaintiff to show negligence. The court charged the jury:

"The railroad, being a common carrier, becomes an insurer of goods placed in its care for shipment, and is responsible to the shipper for any injury that may occur to the goods while in the course of transportation, except that caused by the act of God or public enemy, and subject to certain limitations in the shipment of live stock or perishable goods, which is not necessary to mention now. The derailment of the car in which the goods were being transported by the defendant having been admitted by it, and there being no proof that it was attributed to the act of God or public enemy, the only question left for you, gentlemen, to determine, is the measure of damages the plaintiff has sustained, by reason of the said derailment, to the goods. The measure of damages would be the difference in the value of the goods immediately before the accident happened and the value of the goods after the wreck, as plaintiff may have shown by a fair preponderance of the evidence."

The jury returned a verdict in favor of the plaintiff for $761.96, less $261.96, due the defendant for articles improperly loaded in the car, which claim defendant had set up in a cross-petition. There was a judgment on the verdict for $500.00, motion for new trial overruled, and exceptions duly saved, and the plaintiff in error brings the case to this court by petition in error and case-made. The petition in error contains 24 assignments of error, but those presented in the argument are as follows:

"(1) To the instruction above set out.     (2) There is no evidence of negligence as to the stock injured.     (3) The proper measure of damages was not applied to the household goods.     (4) The error of the court in overruling motion for new trial."

*E. R. Jones, J. C. Wilhoit,* and *Arthur Miller,* for plaintiff in error.

*Crump & Skinner* and *W. T. Anglin,* for defendant in error.

Opinion by DEVEREUX, C. (after stating the facts as above).   Under the first assignment of error it is argued that the court erred in giving the instruction above set out, and this raises the question whether in interstate traffic the carrier can make a contract with the shipper by which it is released from its obligations as a common carrier, and assume those of a forwarder only, and further contract that it shall only be liable for negligence, and that the burden of proof to show negligence shall be assumed by the shipper.   It will be seen from the instruction that the trial court must have treated this contract as void, for it charged that the plainiff in error, being a common carrier, became an insurer, and the only question left to the jury was the amount of the damages.

The Carmack Amendment (Act June 29, 1906, ch. 3591, sec. 7; Fed. Stats. Ann. Sup. 1909, p. 273) provides:

"That any common carrier, railroad, or transportation company receiving property for transportation from a point in one state to a point in another state shall issue a receipt or bill of lading therefor and shall be liable to the lawful holder thereof for any loss, damage or injury to such property caused by it or by any common carrier, railroad, or transportation company to which such prop-

erty may be delivered or over whose line or lines such property may pass, and no contract, receipt, * * * or regulation shall exempt such common carrier, railroad, or transportation company from .the liability hereby imposed: Provided, that nothing in this section shall de- ·prive any holder of such receipt or bill of lading of. any remedy or 'right of action which he has under existing law."

. The act then provides that the company issuing the bill of lading shall be entitled to recover from the common carrier on whose lines the loss occurred the amount of such damage as it may be required to pay to the owner, as may be evidenced by any receipt, judgment, or transcript thereof. This section was construed in *Adams Express Co. v. Croninger,* 226 U. S. 491, 33 Sup. Ct. 148, 57 L. Ed. 314, 44 L. R. A. (N. S.) 257, in which case it was held by this act Congress showed a purpose to take entire control of the subject, and that any state laws attempting to deal with it were void. It is said in the opin'on:

"To hold that the liability therein declared may be increased or diminished by local regulation or local views of public policy will either make the provision less than supreme or indicate that Congress has not shown a purpose to take possession of the subject. The first would be unthinkable and the latter would be to revert to the uncertainties and diversities of rulings which led to the amendment. The duty to issue a bill of lading and the liability thereby assumed are covered in full, and though there is no reference to the effect upon state regulation, it is evident that Congress intended to adopt a uniform rule and relieve such contracts from the diverse regulation to which they had been theretofore subject."

And again in the opinion it is said:

"Some states allowed carriers to exempt themselves from all or a part of the common-law liability, by rule, regulation, or contract; others did not. The federal courts sitting in the various states were following the local rule, a carrier being held liable in one court when under the same state of facts he would be exempt from liability in another. Hence this branch of interstate commerce was being subjected to such a diversity of legislative and judicial holding that it was practically impossible for a shipper engaged in a business that extended beyond the confines of his own state, or for a carrier whose lines were extensive, to know without considerable investigation and trouble, and even then oftentimes with but little certainty, what would be the carrier's actual responsibility as to goods delivered to it for transportation from one state to another. The congressional action has made an end to this diversity; for the national law is paramount and supersedes all state laws as to the rights and liabilities and exemptions created by such transaction. This was doubtless the purpose of the law, and this purpose will be effectuated, and not impaired or destroyed by the state court's obeying and enforcing the provisions of the federal statute where applicable to the facts in such cases as shall come before them."

It thus appears that the object of Congress in passing this act was to make a uniformity of liability on all the common carriers who might form a link in the chain necessary to transport the interstate shipment to its destination, and thus protect this branch of interstate commerce from the diversity of liability to the owner of the property transported which had theretofore existed by reason of the diversity of legislative and judicial holdings of the several states. But this object would be as completely defeated if each carrier over whose line the property was transported could make a different contract, changing its liability, as it would if each state could pass statutes ef-

fecting the same end. Under the provisions of the Carmack Amendment, the initial carrier in the case at bar would be liable to the defendant in error for the damage he suffered, and the act provides that when the initial carrier is required to pay such loss, the railroad on whose line the loss was sustained shall repay it, as evidenced by any receipt, judgment, or transcript thereof. This would indicate a clear intent on the part of Congress that the liability should be uniform, which uniformity would be destroyed if each line of railroad over which the property was transported could make an independent contract, varying its liability to the shippers. It cannot have been the intention of Congress to allow an intermediate carrier to contract for a lesser degree of liability to the shipper than the act had imposed on it in favor of the initial carrier. Another objection to this provision is that if by contract a railroad can divest itself of its character of a common carrier of freight, what is to prevent it from doing the same thing as a common carrier of passengers? The public has granted to the railroads of the country their franchises, including the right of eminent domain, and as a condition to the grant has required the railroads to assume the responsibility and liabilities of common carriers, and, in our opinion, they cannot, by contract with an individual, divest themselves of these liabilities and become only private forwarders. What we have said is not in conflict with the many decisions, state and federal, on this subject, for none of these cases decide that a railroad can, by contract, divest itself of its character of common carrier; nor do any of them hold that in interstate commerce any of the connecting lines can vary its liability by contract, and make it different from that of the initial carrier.

In *Hart v. Pennsylvania R. Co.*, 112 U. S. 331, 5 Sup. Ct. 151, 28 L. Ed. 717, the contract is set out, and by it the carrier does not attempt to divest itself of th. liabilities of a common carrier, or to shift the burden of proving negligence, but only stipulates, in consideration of a reduced freight rate, that in case of damage, it shall only be liable for a maximum amount. In the opinion it is said:

"The limitation as to value has no tendency to exempt from liability for negligence. It does not induce want of care. It exacts from the carrier the measure of care due to the value agreed on. The carrier is bound to respond in that value for negligence. The compensation for carriage is based on that value."

In *Adams Express Co. v. Croninger*, 226 U. S. 491, 33 Sup. Ct. 148, 57 L. Ed. 314, 44 L. R. A. (N. S.) 257, the contract was of the same character. *St. L. & S. F. R. Co. v. Bilby*, 35 Okla. 589, 130 Pac. 1089, follows *Adams Express Company v. Croninger, supra,* in holding that interstate shipments are governed by the act of Congress, and that state laws attempting to regulate interstate commerce are void, but it does not decide the question in this case. *M., K. & T. R. Co. v. Walston*, 37 Okla. 517, 133 Pac. 42; *St. L. & S. F. R. Co. v. Zickafoose*, 39 Okla. 302, 135 Pac. 406; *St. L. & S. F. R. Co. v. Cox*, 40 Okla. 258, 138 Pac. 144; *C., R. I. & P. R. Co. v. Spears*, 31 Okla. 469, 122 Pac. 228, and *M., K. & T. R. Co. v. Hancock*, 26 Okla. 265, 109 Pac. 223, are not in conflict with this decision, because in none of them did the railroad attempt to divest itself of its character as a common carrier, nor did it attempt to change the liability of the road on which the damage was done from that assumed by the initial carrier. We therefore are of the

opinion that this provision of the contract was void. But if it was void, can the charge of the court be sustained? The court, treating this part of the contract as void, instructed the jury that the liability of the plaintiff in error was that of an insurer, but in so doing the trial judge lost sight of the interstate character of this shipment, and of the provisions of the Carmack Amendment, as construed by the Supreme Court of the United States in *Adams Express Co. v. Croninger*, 226 U. S. 491, 33 Sup. Ct. 148, 57 L. Ed. 314, 44 L. R. A. (N. S.) 257, *supra*. In that case it is held:

"What is the liability imposed upon the carrier? It is a liability to any holder of the bill of lading which the primary carrier is required to issue 'for any loss, damage or injury to such property caused by it,' or by any connecting carrier to whom the goods are delivered. The suggestion that an absolute liability exists for every loss, damage, or injury, from any and every cause, would be to make such a carrier an absolute insurer and liable for unavoidable loss or damage; though due to uncontrollable forces. That this was the intent of Congress is not conceivable. To give such emphasis to the words, 'any loss or damage,' would be to ignore the qualifying words, 'caused by it.' The liability thus imposed is limited to 'any loss, injury or damage caused by it or a succeeding carrier to whom the property may be delivered,' and plainly implies a liability for some default in its common-law duty as a common carrier."

It was therefore error to instruct the jury that the liability of the plaintiff in error was that of an insurer, because it had the right to have the question of its negligence submitted to the jury.

It is argued in the brief for the plaintiff in error that there is no evidence of negligence in this case, but

we cannot agree with their contention. The damage was sustained by reason of the car leaving the rails and turning over, and it is a matter of common knowledge that this does not ordinarily occur when care is taken by the railroad. In *Muskogee Traction Co. v. McIntire,* 37 Okla. 684, 133 Pac. 213, it is said:

"The rule of demonstrative evidence of negligence applies in such cases. This rule is one now widely recognized by the authorities, and is referred to in Thompson's Commentaries on the Law of Negligence (vol. 1, sec. 15), as follows: 'The principle is generally expressed in the Latin formula *"res ipsa loquitur,"* "the thing itself speaks." The meaning was thus expressed by Erle, J., in giving his judgment in a noted case:. "Where the thing is shown to be under the management of the defendant or his servants, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from want of care." This definition has met with such approval at the hands of judges in subsequent cases that it has become, so to speak, a legal classic. The meaning is, not that the mere happening of an accidental injury is, of itself and in the abstract, presumptive evidence of negligence; it is that, in the numerous cases which fall within the above definition of the principle, the fact of the accident, when viewed in connection with the circumstances under which it took place, tends to demonstrate negligence, subject to explanation."

In *Ellis v. Railroad,* 24 N. C. 138, it is said:

"We hold, that when" the plaintiff "shows damage, resulting from" the defendant's "act, which act with the exertion of proper care does not ordinarily produce damage, he makes out a *prima facie* case of negligence, which

cannot be repelled but by proof of care, or of some extraordinary accident, which renders care useless."

See, also, *Aycock v. Railroad,* 89 N. C. 321; *Moore v. Parker,* 91 N. C. 275.

To avoid a misconception of this rule, it is well to say that the doctrine of *res ipsa loquitur* does not apply between master and servant.

We therefore recommend that the judgment below be reversed, and the cause remanded, with instructions to grant a new trial.

By the Court: It is so ordered.