# DARROUGH v. FIRST NAT. BANK OF CLAREMORE.

No. 6145. Opinion Filed March 7, 1916.

On Petition for Rehearing, March 28. 1916.

(156 Pac. 191.)

1. **BANKRUPTCY—Property of Bankrupt — Custody — Receivers.** Courts of bankruptcy are invested with such jurisdiction at law and equity as will enable them to exercise original jurisdiction in bankruptcy proceedings, in vacation, in chambers, and during their respective terms, to appoint receivers or marshals, in case the courts shall find it absolutely necessary for the preservation of estates, to take charge of the property of bankrupts after the filing of the petition, and until it is dismissed or the trustee is qualified. ·

2. **SAME—Referees in Bankruptcy—Control of Property.** Referees in bankruptcy are invested, subject always to a review by the judge, within the limits of their districts as established from time to time. with jurisdiction to exercise the powers of the judge for taking possession and releasing of the property of the bankrupt, in the event of the issuance by the clerk of a certificate showing the absence of the judge from the judicial district, or the division of the district, or his sickness, or inability to act.

3. **SAME—Property Taken Under Process—Custody of Law—Interference by State Court.** When property is taken and held under process, mesne or final, of a court of the United States, it is in the custody of the law, and within the exclusive jurisdiction of the court from which the process has issued. for the purposes of the writ, and the possession of the officer cannot be disturbed by process from any state court.

4. **SAME—Summary Proceedings—Determination of Adverse Claims —Property of Bankrupt.** The District Court sitting in bankruptcy has jurisdiction to draw to itself. and to determine by summary proceedings after reasonable notice to the claimants, all controversies between the trustees and adverse claimants over liens upon, and the title and possesion of (1) property in the possession of the bankrupt when the petition in bankruptcy is filed, (2) property held by third parties for him. (3) property lawfully seized by the marshal as the bankrupt's under clause 3 of section 2 of the bankruptcy law, and (4) property claimed by the trustee which has been lawfully reduced to actual possession by the officers of the court.

5.    SAME—Filing of Petition—Property of Bankrupt. The filing of the petition in bankruptcy and the adjudication themselves constitute a caveat and an injunction by the court against any interference with the property of the bankrupt by all persons who have no liens upon, title, or debatable claims to it at the time the petition is filed, and the taking and disposition of it by any of them violates that injunction.

6.    SAME—Courts—Jurisdiction—Rights in Property. Where the property in dispute is in the actual possession of the court of bankruptcy, there comes into play another principle, not peculiar to courts of bankruptcy, but applicable to all courts, federal or state. Where a court of competent jurisdiction has taken property into its possession, through its officers, the property is thereby withdrawn from the jurisdiction of all other courts. The court, having possession of the property, has an ancillary jurisdiction to hear and determine all questions respecting the title, possession, or control of the property. In the courts of the United States this ancillary jurisdiction may be exercised, though it is not authorized by any statute. Jurisdiction in such cases arises out of the possession of the property and is exclusive of the jurisdiction of all other courts, although otherwise the controversy would be recognizable in them. Accordingly, where property was in the possession of the bankrupt at the time of the appointment of a receiver, the bankruptcy court has exclusive jurisdiction to determine the title as against an adverse claimant, and a state court has no jurisdictional right to take, or interfere with the possession of, said property in an action of replevin, or otherwise.

(Syllabus by Robberts, C.)

Error from District Court, Rogers County;
T. L. Brown, Judge.

Action by William H. Darrough against the First National Bank of Claremore. Judgment for defendant, and plaintiff brings error. Affirmed, and rehearing denied.

W. H. Kornegay, for plaintiff in error.

O. L. Rider, for defendant in error.

Opinion by ROBBERTS, C. On the 9th day of November, 1907, the defendant in error, First National Bank, and other creditors of Tehee & Trail, a partnership doing business at Claremore, Okla., presented to the District Court for the Northern District of the Indian Territory

a petition in involuntary bankruptcy, charging that said partnership had committed an act of bankruptcy while insolvent by fraudulently transferring its stock of goods to one S. P. Blakeley within four months of the filing of said petition, and praying that a special warrant issue to the marshal of said district, Wm. H. Darrough, plaintiff in error, to take charge of the property and seize the same; that thereupon the referee in bankruptcy issued a warrant to the plaintiff in error commanding him to seize and take possession of said stock of goods and hold and keep the same safely, subject to the further orders of said court, and that pursuant to said warrant the said marshal, plaintiff in error, did on said 9th day of November, 1907, seize said stock of goods and take the same into his possession; that thereafter and prior to the 14th day of November, 1907, one Ella Blakeley instituted a suit in replevin against said marshal for the possession of said goods, claiming to be the owner thereof.

It will be noted that these proceedings were had in the United States Court for the Northern District of the Indian Territory immediately preceding statehood. Upon the coming of statehood the bankruptcy case was regularly transferred to the United States Court for the Eastern District of Oklahoma, and the replevin suit was transferred to the district court of Rogers county. It further appears that the property passed from the hands of the marshal to a receiver appointed by the United States Court for the Eastern District of Oklahoma; that a trustee in bankruptcy was also appointed, an order of sale entered by the bankruptcy court, and the stock of goods sold by him; that said trustee made report thereof on the 26th day of June, 1908, and distributed the proceeds, amounting to about $800, among the creditors. It follows that

there must have been an adjudication of bankruptcy, otherwise there would have been no appointment of a trustee. There must also have been a determination by the bankruptcy court that said stock of goods was fraudulently transferred, and was therefore the property of the bankrupt, otherwise there would have been no order of sale. During all this time the replevin suit remained on the docket of the district court of Rogers county, and after about three years the same was brought on for trial, and judgment for $1,339.49 was recovered against Darrough, plaintiff in error, for the value of the goods, which he paid, and now sues the defendant in error, one of the petitioning creditors in the bankruptcy proceedings, for reimbursement. The defendant answered by general denial.

After impaneling the jury, counsel for plaintiff made his opening statement, which was practically the same as the petition, and covered the facts of the case in substance as herein above stated. To this statement of facts, including the allegations of plaintiff's petition, the defendant entered a general demurrer, and prayed for judgment. The demurrer and motion for judgment was sustained, and plaintiff brings error.

We gather from the records and briefs that the plaintiff in error seized the goods in controversy as marshal of the bankruptcy court under the authority of clause 3 of section 2 of the Bankruptcy Act of 1898 (30 Stat. 545, c. 541 [U. S. Comp. St. 1913, sec. 9586]), which provides, in substance, that:

"Courts of bankruptcy * * * are hereby invested * * * with such jurisdiction at law and in equity as will enable them to exercise original jurisdiction in bankruptcy proceedings, in vacation, in chambers, and during their respective terms * * * to appoint receivers or

the marshals  *  *  *  in case the courts shall find it ab-
solutely necessary, for the preservation of estates, to take
charge of the property of bankrupts after the filing of the
petition and until it is dismissed or the trustee is quali-
fied."

And the authority of the referee to issue the warrant
for the seizure of the goods is found in section 38 of the
same act and is as follows:

"Referees respectively are hereby invested, subject
always to a review by the judge, within the limits of their
districts as established from time to time, with jurisdic-
tion to  *  *  *  (3) exercise the powers of the judge for
the taking possession and releasing of the property of the
bankrupt in the event of the issuance by the clerk of a
certificate showing the absence of a judge from the judic-
ial district, or the division of the district, or his sickness,
or inability to act.  *  *  *"  (U. S. Comp. St. 1913, sec.
9622.)

In *First National Bank v. Masterson*, 29 Okla. 76,
116 Pac. 163, we find the rule that:

"For jurisdictional purposes; bankruptcy proceedings
are commenced by the filing of the original petition."

From the foregoing we have squarely presented here
the question whether the possession of the property of the
debtors herein, which had been seized under process of
the bankruptcy court, issued under clause 3 of section
2 above mentioned, can be taken by the writ of process of
another court.  The question propounded by counsel for
defendant in error is, "Does such seizure by the bank-
ruptcy court draw to it the sole and exclusive jurisdiction
of the matter?"  As we view the law, sustained by a long
line of authorities, that question must be answered in the
affirmative.

In *Covell v. Heyman,* 111 U. S. 176, 4 Sup. Ct. 355, 28 L. Ed. 390, the first, second, third, and fifth paragraphs of the syllabus lay down the general law affecting and establishing the jurisdiction of the federal and state courts as follows:

"1.   It is error in a state court to permit a recovery, by the rightful owner, of the possession of personal property, against a marshal of the United States or his deputy, who holds the same by virtue of an execution issued upon a judgment of the United States Circuit Court.

"2.   The possession, by a United States marshal or his deputy, of property by virtue of a levy under an execution issued by a United States court is, in itself, a complete defense to a subsequent action of replevin in a state court, without regard to the rightful ownership.

"3.   When property is taken and held under process, mesne or final, of a court of the United States, it is in the custody of the law and within the exclusive jurisdiction of the court from which the process has issued, for the purposes of the writ, and the possession of the officer cannot be disturbed by process from any state court.   *   *   *"

"5.   A third person, a stranger to the suit and claiming the property as owner, may prosecute his right to restitution in such case, by ancillary proceedings in the court in which the process issued, or he may pursue his remedy for damages against the officer, either personally for the trespass or for the breach of his official duty, upon his bond and against his sureties."

In that case the defendant in error, who was plaintiff in the state court, brought her action in replevin for recovery of specific personal property to which she claimed title, and which, she alleged, was wrongfully detained from her by the plaintiff in error who was a deputy United States marshal and defendant in the state court. The marshal was holding possession of the property in controversy

by virtue of an execution issued on a judgment rendered by the Circuit Court of the United States for the Western District of Michigan, against Adolph Heyman, having taken the same by virtue of a levy under said execution as the property of the judgment debtor. Judgment was rendered in the Supreme Court of the state for the plaintiff below, upon a finding in favor of her title to the property, reversing the judgment for the defendant below in the circuit court of Kent county. To reverse that judgment, a writ of error was prosecuted. In passing upon the question, Mr. Justice Matthews, of the Supreme Court of the United States, said:

"The sole question presented for our decision is whether it was error in the state court to permit a recovery of the possession of property thus held, against a marshal of the United States or his deputy for the rightful owner; and whether, on the other hand, it should not have adjudged in favor of the defendant below, that his possession of the property by virtue of the levy under the writ was, in itself, a complete defense to the action of replevin, without regard to the rightful ownership.

"The case of *Freeman v. Howe*, 24 How. (65 U. S.) 450, 16 L. Ed. 749, was precisely like the present in its circumstances, except that there the process under which the marshal had seized and held the property replevied, was an attachment according to the state practice in Massachusetts, being mesne process, directed, however, not against property specifically described, but commanding a levy, as in case of *fi. fa.*, upon the property of the defendant. Whether that difference is material is, perhaps, the only question to be considered, for the doctrine of that decision is too firmly established in this court to be longer open to question. The proper answer to it will be found by an examination of the principles on which the judgment in that case proceeded, and of those cases which preceded, and of others, which have followed it.

"In the opinion in that case, Mr. Justice Nelson refers to the case of *Taylor v. Carryl,* 20 How. (61 U. S.) 583, 15 L. Ed. 1028, as a conclusive and sufficient authority on the point. He said: 'The main point there decided was that the property seized by the sheriff, under the process of attachment from the state court and while in the custody of the officer, could not be seized or taken from him by a process from the District Court of the United States, and that the attempt to seize it by the marshal, by a notice or otherwise, was a nullity, and gave the court no jurisdiction over it, inasmuch as to give jurisdiction to the District Court in a proceeding *in rem,* there must be a valid seizure and an actual control of the *res* under the process.' * * *

"The opinion then proceeds to show that no distinction can be made, affecting the question, between process *in rem* and an attachment issued by a common-law court, although the latter is not the foundation of the jurisdiction, and the property seized is not the subject-matter of the suit, which is simply for the recovery of a debt without a lien or charge upon the property, except that resulting from its seizure, as security for the judgment. The objection that the process was directed against the property of the defendant and conferred no authority upon the marshal to take the property of the plaintiffs in the replevin suit, is then answered, the court saying: 'For the property having been seized under the process of attachment and in the custody of the marshal, and the right to hold it being a question belonging to the federal court, under whose process it was seized, to determine, there was no authority, as we have seen, under the process of the state court to interfere with it.'

"The opinion of the court then points out the error of Chancellor Kent, in his statement (1 Com. 410) that, 'if a marshal of the United States, under an execution in favor of the United States against A., should seize the person or property of B., then the state courts have jurisdiction to protect the person and the property so illegally invaded.'

Commenting on this statement, it is said that the effect of the principle, if admitted, would be to draw into the state courts 'not only all questions of the liability of property seized upon mesne and final process issued under the authority of the federal courts, including the admiralty, for this court can be no exception, for the purposes for which it was seized, but also the arrests upon mesne, and imprisonment upon final process of the person in both civil and criminal cases, for in every case the question of jurisdiction could be made, and the court adds: 'We need scarcely remark that no government could maintain the administration or execution of its laws, civil or criminal, if the jurisdiction of its judicial tribunals were subject to the determination of another.'

"To meet the objection that the party whose property had been wrongfully taken and withheld would be left without remedy, unless, by virtue of citizenship, he could sue in a federal court, the opinion then explains the remedy, in such cases, by an ancillary proceeding in the court whose process has been made the instrument of the wrong; a remedy, the principle and procedure of which, we had occasion recently in the case of *Krippendorf v. Hyde* ([110 U. S. 276, 4 Sup. Ct. 27, 28 L. Ed. 145]), to restate and reaffirm.

"The point of the decision in *Freeman v. Howe* [24 How. 450, 16 L. Ed. 749], *supra,* is that when property is taken and held under process, mesne or final, of a court of the United States, it is in the custody of the law and within the exclusive jurisdiction of the court from which the process has issued, for the purposes of the writ; that the possession of the officer cannot be disturbed by process from any state court, because to disturb that possession would be to invade the jurisdiction of the court by whose command it is held, and to violate the law which that jurisdiction is appointed to administer; that any person, not a party to the suit or judgment, whose property has been wrongfully but under color of process taken and withheld, may prosecute, by ancillary proceedings, in the court

whence the process issued, his remedy for restitution of the property or its proceeds, while remaining in the control of this court. * * *

"Property thus levied on by attachment or taken in execution is brought by the writ within the scope of the jurisdiction of the court whose process it is, and as long as it remains in the possession of the officer it is in the custody of the law. It is the bare fact of that possession under claim and color of that authority, without respect to the ultimate right to be asserted otherwise and elsewhere, as already sufficiently explained, that furnishes to the officer complete immunity from the process of every other jurisdiction that attempts to dispossess him. That was the defense made and relied on by the plaintiff in error in the present case, and to which the Supreme Court of Michigan refused to give its due and conclusive effect. For that error, its judgment is reversed and the cause is remanded, with directions to affirm the judgment of the circuit court for the county of Kent, in favor of the plaintiff in error, and it is so ordered."

The rule laid down in *Clay v. Waters*, 178 Fed. 385, 101 C. C. A. 645 (8th Circuit), is as follows:

"The District Court sitting in bankruptcy has jurisdiction to draw to itself and to determine by summary proceedings after reasonable notice to the claimants all controversies between the trustee and adverse claimants over liens upon and the title and possession of (1) property in the possession of the bankrupt when the petition in bankruptcy is filed, (2) property held by third parties for him, (3) property lawfully seized by the marshal as the bankrupt's under clause 3 of section 2 of the bankruptcy law, and (4) property claimed by the trustee which has been lawfully reduced to actual possession by the officers of the court. * * *

"The filing of the petition in bankruptcy and the adjudication themselves constitute a *caveat* and an injunction by the court against any interference with the prop-

erty of the bankrupt by all persons who have no liens upon, titles, or debatable claims to it at the time the petition is filed, and the taking and disposition of it by any of them violates that injunction."

Mr. Justice Moody, speaking for the Supreme Court of the United States, in *Murphy v. John Hoffman Co.*, 211 U. S. 562, 568, 29 Sup. Ct. 154, 156, 53 L. Ed. 327-330, says:

"Where the property in dispute is in the actual possession of the court of bankruptcy there comes into play another principle, not peculiar to courts of bankruptcy but applicable to all courts, federal or state. Where a court of competent jurisdiction has taken property into its possession, through its officers, the property is thereby withdrawn from the jurisdiction of all other courts. The court, having possession of the property, has an ancillary jurisdiction to hear and determine all questions respecting the title, possession, or control of the property. In the courts of the United States this ancillary jurisdiction may be exercised, though it is not authorized by any statute. Jurisdiction in such cases arises out of the possession of the property and is exclusive of the jurisdiction of all other courts, although otherwise the controversy would be cognizable in them. *Wabash R. Co. v. Adelbert College*, 208 U. S. 38, 54, 28 Sup. Ct. 182, 52 L. Ed. 379, 386. Accordingly, where property was in the possession of the bankrupt at the time of the appointment of a receiver, it was held that the bankruptcy court had jurisdiction to determine the title to it as against an adverse claimant, and that the receiver had no right to deliver it to him without the order of the court. *Whitney v. Wenman*, 198 U. S. 539, 25 Sup. Ct. 778, 49 L. Ed. 1157. * * *"

In *French v. White*, 78 Vt. 89, 62 Atl. 35, 2 L. R. A. (N. S.) 804, 6 Ann. Cas. 479, relying upon the authority of *Mueller v. Nugent*, 184 U. S. 1, 22 Sup. Ct. 269, 46 L. Ed. 405, the court says:

" 'It is as true of the present law as it was of that of 1867 that the filing of the petition is a *caveat* to all the world, and in effect an attachment and injunction *(International Bank v. Sherman,* 101 U. S. 407, 25 L. Ed. 867), and on adjudication, title to the bankrupt's property became vested in the trustee (sections 21e, 70, Bankruptcy Act July 1, 1898, c. 541, 30 Stat. at Large, 552, 565, U. S. Comp. Stat. 1901, pp. 3430, 3451), with actual or constructive possession, and placed in the custody of the bankruptcy court.' Since the stock in question, as a part of the bankrupt estate, was in the custody of the federal court, it could not be taken out of that custody by any process from a state court. * * * The attempt to seize the property by attachment was a nullity, and gave the state court no jurisdiction over it."

In *McAfee v. Mathis,* 155 Ala. 561, 46 South. 870, the creditors of a bankrupt levied an attachment against the bankrupt's property, and garnished the property in the hands of the receiver in bankruptcy. In the third headnote of the case the court says:

"The referee had jurisdiction to appoint a receiver, and the property was in the custody of the court, at the time of the attachment and garnishment proceedings, by virtue of the referee's order, and hence the attachment and garnishment proceedings were void."

In *Mishawaka Mfg. Co. v. Powell,* 98 Mo. App. 537, 72 S. W. 723, the court, quoting from *Keegan v. King* (D. C.) 96 Fed. 758, says:

"*Keegan v. King* (D. C.) 96 Fed. 758, was where a trustee had possession of certain fixtures scheduled by the bankrupt and had advertised the personal property of the bankrupt, including the fixtures, for sale, and a stranger brought a suit in the state court to restrain the trustee from selling the fixtures and to establish the title to the property against the trustee. In the course

of the opinion of the court disposing of the case it was said: 'After this court has taken possession of property through its receiver and trustee as the property of the bankrupt, and has retained the actual and continuous possession of the same from a time long anterior to the commencement of the suit in the state court, is it competent for parties who claim to be the owners of the property so in the actual custody and possession of this court to maintain a suit in a state court for the purpose of settling the title and enjoining the officer of this court from proceeding to the disposition of such property? The statement of the question would seem to carry its own answer. This court, being in possession of the property in controversy, has the exclusive right to determine all conflicting claims as to the title and right of possession of the property so in its custody (citing *Freeman v. Howe,* 24 How. 450 [16 L. Ed. 759], and *Buck v. Colbath,* 3 Wall. 334). * * * The moment that an adjudication in bankruptcy has been made, the title to all the property of the bankrupt as of that date passes to the person who is subsequently chosen trustee. From the time of the adjudication the property of the bankrupt is in the custody and control of the bankruptcy court. From the time such property by the adjudication in bankruptcy comes into the custody of the bankrupt court it is *in custodia legis,* and that court will not permit any person, even though he be an officer of the state court acting under its process, to interfere with the custody or possession by the bankrupt court or its officers of the property then in custody. And it does this upon the same principle as the bankrupt court refuses to interfere with a levy lawfully made by a sheriff under process of a state court prior to the adjudication in bankruptcy, or refuses to interfere with the possession of a receiver previously appointed by a state court, or any other officer acting under authority conferred prior to the adjudication.' "

And again, quoting from *White v. Schloerb,* 178 U.
S. 542, 20 Sup. Ct. 1007, 44 L. Ed. 1183, the following
language is used:

"*White v. Schloerb,* 178 U. S. 542 ( 20 Sup. Ct. 1007,
44 L. Ed. 1183), was where, after the referee had taken
possession of the stock of goods in the store of the bank-
rupts and had caused the entrance to it to be locked up,
a writ of replevin of some of the goods was sued out of
a state court and was executed by a sheriff forcibly en-
tering the store and taking possession of the goods.   The
plaintiffs in the replevin claimed that the bankrupts had
purchased and obtained the goods from them by false
and fraudulent representations on which they relied, and
that before suing out the writ they had elected to rescind
and had demanded the return of the goods of the bank-
rupts.   In the opinion of the court it is, *inter alia,* said:
'The goods were in the lawful possession of and custody
of the referee in bankruptcy and of the bankruptcy court
whose representative and substitute he was.   Being thus
in custody of a court of the United States, they could not
be taken out of that custody upon any process from a
state court.   *   *   *   After an adjudication in bank-
ruptcy, an action of replevin in a state court cannot be
commenced and maintained against the bankrupt to re-
cover the property in the possession of and claimed by
the bankrupt at the time of that adjudication and in pos-
session of the referee in bankruptcy at the time when the
action of replevin is begun.' "

In the body of the opinion, *supra,* the Missouri Court
of Appeals says:

"The determination of these questions in a case like
this falls within the exclusive jurisdiction of the bank-
ruptcy court.   That court has the exclusive jurisdiction
to determine the title to the goods as between the trustee
and the plaintiffs, and that jurisdiction cannot be invaded
and overthrown by the action of replevin begun in the
state court.   Whether or not we apply the doctrine of

*in custodia legis,* or adopt the theory that the jurisdiction of the matter is exclusively within the bankruptcy court, the result would be the same; for under either view the judgment was for the wrong party."

- In *Concord Iron &. Met. Co. v. Couch,* the Supreme Court of New Hampshire, 75 N. H. 593, 73 Atl. 301, says:

"The state courts have no jurisdiction of an action of replevin against a trustee in bankruptcy."

In *Goodrich v. Eritz,* 4 Ark. 525, reaffirmed in *Spring v. Bourland,* 11 Ark. 658, 54 Am. Dec. 243, the court says:

"That replevin cannot be maintained against an officer, who has the custody and possession of property, under a valid execution, is clear. In such case, the property is already in custody of the law, and cannot be replevied out of it. * * * Replevin was certainly not the proper remedy to obtain possession of the property, or damages for its loss or detention."

Nor can it be successfully maintained that the state court had concurrent jurisdiction with the bankruptcy court. The answer to such a contention is that the entire record, including statement of counsel, shows that the bankruptcy court was the first to take jurisdiction of the property involved. *Murphy v. John Hoffman Co., supra; Covell v. Heyman, supra; White v. Schloerb, supra; Keegan v. King, supra.* The plaintiff in error voluntarily paid the judgment in the state court, and now seeks to recover the amount so paid from the defendant herein. That pretended judgment was rendered in a court which had no jurisdiction of the subject-matter and was therefore absolutely void. It was a mere nullity.

This court in a recent case, *Jefferson v. Gallagher, ante,* p. 405, 150 Pac. 1071, quoting from Black on Judgments, sec. 171, said:

" 'The first and fundamental requisite to the validity of a judgment is that it should have been rendered by a court having jurisdiction, for without jurisdiction the courts can do nothing, and a judgment rendered without jurisdiction is a mere nullity. The jurisdiction required is of three sorts: (1) Jurisdiction of the parties; (2) jurisdiction of the general subject-matter; (3) jurisdiction of the particular matter which the judgment professes to decide.'

" 'Now a "void" judgment is in reality no judgment at all. It is a mere nullity. It is attended by none of the consequences of a valid adjudication, nor is it entitled to the respect accorded to one. It can neither affect, impair, nor create rights. As to the person against whom it professes to be rendered, it binds him in no degree whatever, it has no effect as a lien upon his property, and it does not raise an estoppel against him. As to the person in whose favor it professes to be, it places him in no better position than he occupied before; it gives him no new right, but an attempt to enforce it will place him in peril. As to the third persons, it can neither be a source of title nor an impediment in the way of enforcing their claims. It is not necessary to take any steps to have it reversed, vacated, or set aside. But whenever it is brought up against the party, he may assail its pretensions and show its worthlessness. It is supported by no presumptions, and may be impeached in any action, direct or collateral.' "

In *Grimmett v. Askew,* 48 Ark. 151, 2 S. W. 707, that court says:

"What of jurisdiction [of the subject-matter] may always be set up against a judgment when sought to be enforced, or where any benefit is claimed under it."

Consent cannot confer jurisdiction of the subject-matter, although it may of the person. The plaintiff was not bound to pay the judgment in the state court, because it was void. He cannot, therefore, compel others to reimburse him for voluntarily paying a void judgment.

The judgment should be affirmed.

By the Court:   It is so ordered.

### ON PETITION FOR REHEARING.

Some of the citations in the foregoing opinion may seem to have reference to property *in custodia legis* generally, but the intention was to speak only of bankruptcy cases and bankruptcy courts. Let it be distinctly understood that the questions here decided, so far as they relate to property *in custodia legis*, have reference only to bankruptcy courts; that is the only court involved, and the only question decided.

Application for rehearing denied.

By the Court:   It is so ordered.