## HASKELL v. ST. LOUIS & S. F. R. CO. et al.

No. 7891—Opinion Filed Jan. 2, 1917.

(162 Pac. 459.)

### 1. Carriers—Carriage of Goods—Contracts.

"A special contract executed between a common carrier and a shipper, in consideration of a lower freight rate, providing that in case of loss or damage to the property the liability of the carrier shall not exceed a maximum valuation per 100 pounds, is not a contract attempting to exempt the carrier from liability on account of its own negligence; and if the contract is reasonable and just, and has been fairly entered into by the shipper, the same will be upheld as a proper and lawful means of determining the amount of the carrier's liability in case of loss." Missouri, O. & G. R. Co. v. Porter, 41 Okla. 702, 139 Pac. 954.

### 2. Same—Interstate Shipment.

"As to interstate shipments, the common-law liability of the carrier for the safe carriage of property may be limited by a special contract with the shipper, where such contract, being supported by a consideration, is reasonable and fairly entered into by the shipper, and does not attempt to cover losses caused by the negligence or misconduct of the carrier." St. Louis & S. F. R. Co. v. Zickafoose, 39 Okla. 302, 135 Pac. 406.

### 3. Appeal and Error—Review—Findings of Court.

When the question of whether or not a contract limiting the liability of the common carrier in case of loss or damage was fairly entered into, is supported by a consideration, and is reasonable, is submitted to tne trial court by agreement, a jury being waived, the judgment of the trial court will not be disturbed if the evidence and law support the judgment.

(Syllabus by Hayson, C.)

Error from Superior Court, Muskogee County; Hal C. Thurman, Judge.

Action by M. C. Haskell against the St. Louis & San Francisco Railroad Company, W. B. Biddle, and others, receivers, and the St. Louis, Iron Mountain & Southern Railway Company. There was judgment for plaintiff against the last named defendant

and for the first-named defendants, and plaintiff brings error. Affirmed.

Brook & Brook and A. Lee Brook, for plaintiff in error.

W. F. Evans, R. A. Kleinschmidt, and Fred E. Suits, for defendants in error St. Louis & S. F. R. Co. and its receivers.

Thos. B. Pryor and W. L. Curtis, for defendant in error St. Louis, I. M. & S. R. Co.

Opinion by HAYSON, C. This was an action brought in the superior court of Muskogee county, Okla., on February 19, 1915, by M. C. Haskell, against the above-named defendants in error, to recover damages for the loss of household goods shipped over the roads of defendants in error. The record discloses the following facts: On December 23, 1913, plaintiff at Altheimer, Ark., delivered certain household goods to the agent of the St. Louis & Southwestern Railroad Company to be shipped to Muskogee, Okla. The plaintiff paid $1.15 per hundredweight for 925 pounds, and received a waybill as receipt therefor. The goods were delivered by the initial carrier to the St. Louis, Iron Mountain & Southern Railway Company, and a portion of said goods was delivered to the St. Louis & San Francisco Railroad Company to be by them delivered at Muskogee, Okla. On January 5, 1914, plaintiff demanded the delivery of said household goods from the agent of the St. Louis & San Francisco Railroad Company as per bill of lading. Said agent of the St. Louis & San Francisco Railroad Company demanded $6.82 additional charges before delivering said goods which plaintiff paid. There was a shortage of goods consisting of a certain roll or bundle of bedding designated in the bill of lading as "1 rl. bedding." The evidence shows that the roll consisted of nine bedquilts, one feather bed, two cotton mattresses, four pillows, one pink spread, two pairs of blankets, one wagon sheet, and one rope. In addition to this shortage, a kitchen table and rocking chair were in a damaged condition, the table having two legs broken, and the rocking chair one arm broken. The plaintiff refused to receive this damaged furniture. The plaintiff at the time of shipping the goods at Altheimer, Ark., signed a bill of lading in which damages to his goods, if any, in consideration of a reduced freight rate, were limited to $10 per hundredweight, and prepaid such reduced freight rate amounting to $10.64. It was stipulated by the parties at the trial of the cause:

That certain depositions on file in a former suit relative to the goods might be "received and read as evidence upon the part of plain-tiff in this case, subject, however, to objections that might be taken to any question and response thereto on account and by reason of its being incompetent, irrelevant, and immaterial."

The stipulation further provided:

"It is further stipulated and agreed that the testimony of R. A. Couch as per deposition referred to above, as to the rates and tariffs under which goods in question were shipped, which shows that as a consideration for the lower rate or tariff in force at that time in connection with said shipment the plaintiff, M. C. Haskell, released said shipment to $10 per hundredweight, and that without said release he would have been required to pay a higher rate or tariff, shall be taken and accepted in lieu of the first or primary testimony as to the tariffs on file at that time with the Interstate Commerce Commission governing the rates between Altheimer, Ark., and Muskogee, Okla., on household goods.

"And it is further agreed that the household goods in question constitute a portion of an interstate shipment."

The evidence further disclosed that when the household goods were delivered to the St. Louis & San Francisco Railroad Company the bundle or roll of bedding was missing, and the table and rocking chair were broken and were in the same condition as they were when they arrived at Muskogee. The deposition of R. A. Couch was to the effect that at the time the goods were received for shipment at Altheimer, Ark., the two rates of freight were explained to the plaintiff, and that the plaintiff accepted the lower rate and took the valuation of $10 per hundredweight in case of loss or damage, and with that understanding signed the bill of lading and prepaid the freight. The evidence further disclosed that suit was first brought against the St. Louis & San Francisco Railroad Company alone, that the suit was dismissed without prejudice, and that a check for $6.82 or $6.32 representing the charge made at Muskogee was received by the attorney for plaintiff by mail from the St. Louis & San Francisco Railroad Company, and that he immediately returned the same to said company.

The plaintiff brought suit for $146.30 damages for the loss of goods, and $6.82 additional freight charges, praying for judgment for $153.12. The defendants file separate answers denying liability upon the part of the St. Louis, Iron Mountain & Southern Railway Company for a greater amount than $10 per hundredweight and the defendant St. Louis & San Francisco Railroad Company denying any liability. No reply was filed. The trial court heard the cause by agree-

ment, a jury being waived. At the conclusion of the plaintiff's testimony the court sustained a demurrer as to the St. Louis & San Francisco Railroad Company and others and allowed plaintiff an exception, and at the close of the trial rendered judgment for plaintiff for $7.50 against the St. Louis, Iron Mountain & Southern Railway Company. A motion for new trial was filed, overruled, and exceptions saved. The plaintiff appeals and sets up several assignments of error, but urges only two reasons why he claims the judgment should be reversed:

First. "The bill of lading did not determine the contract of shipment if it were not shown that the terms thereof were reasonable."

Second. "The charging of an additional amount of $6.82 by the terminal railroad company, the St. Louis & San Francisco Railroad Company, at Muskogee, Okla., and the acceptance and payment of the said sum by the shipper, M. C. Haskell, is an abandonment of the original contract of shipment and an acceptance of, or entrance into, a new contract."

Neither of these reasons under the record in this case are tenable. The first proposition is untenable for the reason that there is sufficient evidence in the record to show that the contract was fairly entered into; that the goods lost were in such a condition at the time of shipment by being rolled up in the wagon sheet that the only party who knew their actual value was the plaintiff himself, and, having accepted the lower rate and placed the value at $10 per hundredweight, he should not later be heard to say that they were of greater value. The question as to whether the contract as to value was fairly entered into and the terms thereof reasonable was under the state of this record one to be determined by the court from the evidence and stipulations in the cause, and the evidence and stipulations in the case amply sustain his judgment. As to whether or not the bill of lading determined the contract of shipment, the shipment being an interstate shipment, it is only necessary to cite authorities from our own state.

The question has been before this court a number of times. In St. Louis & S. F. R. Co. v. Peery & Murray, 40 Okla. 258, 138 Pac. 144, the court say:

"(a) As to interstate shipments, the common-law liability of the carrier for the safe carriage of property may be limited by a special contract with the shipper, where such contract, being supported by a consideration. is reasonable and fairly entered into by the shipper, and does not attempt to cover losses caused by the negligence or misconduct of the carrier."

And again in M., O. & G. R. Co. v. Porter, 41 Okla. 702, 139 Pac. 954:

"A special contract executed between a common carrier and a shipper in consideration of a lower freight rate, providing that in case of loss or damage to the property the liability of the carrier shall not exceed a maximum valuation per 100 pounds, is not a contract attempting to exempt the carrier from liability on account of its own negligence; and if the contract is reasonable and just, and has been fairly entered into by the shipper, the same will be upheld as a proper and lawful means of determining the amount of the carriers' liability in case of loss."

To the same effect are the following cases: St. Louis & S. F. R. Co. v. Zickafoose, 39 Okla. 302, 135 Pac. 406; St. Louis & S. F. R. Co. v. Copeland, 23 Okla. 837, 102 Pac. 104; Patterson v. M., K. & T. R. Co., 24 Okla. 747, 104 Pac. 31; M., K. & T. R. Co v. Davis, 24 Okla. 677, 104 Pac. 34, 24 L. R. A. (N. S.) 866; St. L. & S. F. R. Co. v. Cake, 25 Okla. 227, 105 Pac. 322; C., R. I. & P. R. Co. v. Wehrman, 25 Okla. 147, 105 Pac. 328; M., K. & T. R. Co. v. Hancock, 26 Okla. 254, 109 Pac. 220; Midland Valley R. Co. v. Ezell, 29 Okla. 40, 116 Pac. 163; Adams Express Co. v. Croninger, 226 U. S. 491, 33 Sup. Ct. 148, 57 L. Ed. 314, 44 L R. A. (N. S.) 257; St. L. & S. F. R. Co. v Wynn, 56 Okla. 509, 156 Pac. 346; St. L. & S. F. R. Co. v. Akard, 60 Okla. 4, 159 Pac. 344.

Under the second proposition urged by counsel we have a novel situation. Plaintiff sues for damages for the loss of goods, claiming now that the contract has been changed by the terminal carrier so that he is no longer limited the value placed upon the goods in the original bill of lading by reason of the terminal carrier demanding a larger freight rate and securing same from plaintiff. At the same time he is seeking to recover the additional charge from the terminal carrier as an overcharge. These two positions cannot both be maintained at the same time. He must stand on one contract or the other. But the record discloses that plaintiff through his attorney refused to accept the return of the additional freight charge from the terminal carrier, and we will assume that plaintiff takes the position that he can recover the full value of the goods by reason of the terminal carrier having exacted other charges. We are then met with the proposition that neither the loss of the goods nor the damage was caused by any act or fault of the terminal carrier under the undisputed evidence. The proposition of law, however, has been settled by this court in the case of Missouri, O. & G.

R. Co. v. French, 52 Okla. 222, 152 Pac. 591, where the court say:

"Where, in an interstate shipment, the initial carrier issues a bill of lading, connecting carriers over whose line the shipment passes on the way to its destination cannot enter into new contracts with the shipper, by which the liability of such carrier is lessened in case of damage to the property so being carried over its line as a link in the interstate transportation."

If such contract cannot be lessened by express contract, it certainly cannot be increased by implied contract, unless plaintiff can show that the initial carrier in some way ratified the act or accepted same benefits flowing from the transaction. This he does not attempt.

Under the record as it comes before us we find no error in the judgment of the trial court.

The judgment will be in all things affirmed.

By the Court: It is so ordered.